April ARNOLD, Plaintiff–Appellant,

v.

**ANTON COOPERATIVE ASSOCIATION, Chester Kenney, and Louanne Kenney, Defendants–Appellees.**

No. 09CA2422.

Colorado Court of Appeals, Div. I.

Sept. 1, 2011.

§ 24–51–1105, C.R.S.2010.

McNamara Law Firm, P.C., J. Bryan Gwinn, Denver, Colorado, for Plaintiff–Appellant.

McClure & Eggleston, LLC, John C. McClure, Denver, Colorado, for Defendant–Appellee Anton Cooperative Association.

Overturf McGath Hull & Doherty, P.C., Brandon P. Hull, Nikolai N. Frant, Denver, Colorado, for Defendants–Appellees Chester Kenney and Louanne Kenney.

Opinion by Judge TERRY.

In this appeal, we consider the subject matter jurisdiction of Colorado courts in a suit alleging discrimination in a place of public accommodation under part 6 of the Colorado Civil Rights Act, sections 24–34–601 to –605, C.R.S.2010(CRA). We conclude that district courts and county courts have concurrent jurisdiction over claims brought under part 6 of the CRA, and that the trial court therefore erred in dismissing the CRA claim of plaintiff, April Arnold. We also conclude, however, that the trial court did not err in dismissing Arnold's contract claims before trial.

Arnold appeals the trial court's judgment against her and in favor of defendants, Anton Cooperative Association (the Association), Chester Kenney, and Louanne Kenney. Arnold also appeals the orders awarding costs and fees to defendants. We affirm in part, reverse in part, and remand with directions.

I. Background

Arnold is a member of the Association, which operates a general store. Chester Kenney is the Manager of the Association, and Louanne Kenney is his wife and an employee of the Association.

In May 2006, the Association sent Arnold a letter informing her that the Association's board had "decided that the best possible outcome under the circumstances would be for [Arnold] to not conduct business at the Anton coop." The parties do not contest that this notice meant that Arnold could no longer enter or purchase from the Association's store.

Arnold filed a discrimination claim against the Association with the Colorado Civil Rights Division (CCRD). After investigating Arnold's claim, CCRD issued a notice to her stating that (1) it lacked probable cause to support Arnold's claim of discrimination, and (2) if she desired, she could pursue her claim in district court.

Arnold filed suit against the Association in Washington County District Court. The complaint alleged the following facts:

- For approximately nine years, Arnold was a member of and had done business with the Association, and had purchased various materials and supplies at the Association's store for both business and personal use.

- The Association's store "is the only place within 30 miles to purchase many necessities."

- Louanne Kenney told Arnold that she "did not want to do business with" Arnold because Chester Kenney was seeking to have a relationship with Arnold. From that point on, the Kenneys made it difficult for Arnold to do business at the store, including encouraging employees to treat her in a rude manner and to decline to perform services for her.

- These actions by the Kenneys culminated in the May 2006 letter indicating the Association would no longer do business with Arnold.

The complaint contained three claims for relief, alleging that (1) the Association's store was a place of public accommodation

and the Association had discriminated against Arnold because of her gender and (unspecified) disability, in violation of the CRA; (2) the Association had breached the terms of its membership contract with her; and (3) defendants Chester and Louanne Kenney had intentionally interfered with the membership contract.

The Association's answer denied the material allegations underlying Arnold's claims. Its counterclaim alleged that, on various occasions while Arnold was in the store, she had been disruptive, lost self-control, raised her voice, used an intimidating manner, and made unreasonable demands in the presence of the Association's employees, board members, and sometimes other patrons, and that board members and employees were intimidated by and fearful of her. It also alleged that Arnold had presented two checks from a closed bank account in satisfaction of a debt owed to the Association. Based on these allegations, the Association sought a permanent injunction to prevent Arnold from entering or using the Association's facilities.

Defendants filed pretrial motions to dismiss Arnold's claims. The trial court granted the motion to dismiss Arnold's CRA claim, reasoning that section 24–34–603, C.R.S.2010, vests county courts with jurisdiction over public accommodation claims under the CRA, and that district courts therefore lack jurisdiction over such claims. Shortly before trial was to begin, the court dismissed Arnold's other two claims on the ground that Arnold had not identified any enforceable contractual right to recovery. The Association later voluntarily dismissed its counterclaim.

## II. Subject Matter Jurisdiction

Arnold argues that the trial court erred in dismissing her claim for discrimination in a place of public accommodation under part 6 of the CRA. We agree.

### A. Standard of Review

When reviewing motions to dismiss for lack of subject matter jurisdiction under C.R.C.P. 12(b)(1), we defer to the trial court's factual findings unless they are so clearly erroneous as to find no support in the record, but we review the trial court's legal conclu-

sions de novo. *Levine v. Katz*, 192 P.3d 1008, 1012 (Colo.App.2006). "Statutory construction is a question of law we review de novo." *Specialty Restaurants Corp. v. Nelson*, 231 P.3d 393, 397 (Colo.2010).

To reasonably effectuate the General Assembly's intent, a statute must be read and considered as a whole. *In re Marriage of Ikeler*, 161 P.3d 663, 666–67 (Colo.2007). "We will interpret a statute to give consistent, harmonious, and sensible effect to all its parts." *Id.* at 667. "If separate clauses within a statute may be reconciled by one construction but would conflict under a different interpretation, the construction which results in harmony rather than inconsistency should be adopted." *People v. District Court*, 713 P.2d 918, 921 (Colo.1986).

### B. Jurisdiction Under Section 24–34–603

The trial court concluded that only the county courts have jurisdiction to hear public accommodation claims under the CRA. Defendants now contend that claims *for damages* under the public accommodation provisions contained in part 6 of the CRA may only be brought in county court, and that because Arnold did not seek relief other than damages, her claim could not be brought in district court. Both the trial court and defendants relied on the language of section 24–34–603, which states:

> The county court in the county where the offense is committed shall have jurisdiction in all civil actions brought under this part 6 to recover damages to the extent of the jurisdiction of the county court to recover a money demand in other actions. Either party shall have the right to have the cause tried by jury and to appeal from the judgment of the court in the same manner as in other civil suits.

We disagree that this provision precludes jurisdiction in the district courts to hear claims of any kind under part 6, let alone claims for damages.

We begin our analysis by reference to article VI, section 9 of the Colorado Constitution. As relevant here, that section states, "[t]he district courts shall be trial courts of record with general jurisdiction, and shall

have original jurisdiction in all civil ... cases, except as otherwise provided herein." While the General Assembly has the power to limit the courts' jurisdiction, "no statute will be held to so limit court power unless the limitation is explicit." *In re A. W.*, 637 P.2d 366, 373–74 (Colo.1981).

The CRA contains no explicit limitation of jurisdiction to the county courts. On the contrary, reading the disparate parts of the CRA harmoniously, as we must, *see In re Marriage of Ikeler*, 161 P.3d at 666–67, we conclude the following:

- The district courts have jurisdiction over claims brought under the public accommodation provisions contained in part 6 of the CRA. *See* § 24–34–306(2)(b)(I)(B), C.R.S.2010 (where a party files a charge alleging discriminatory or unfair practice under CRA parts 4 through 7, and the CCRD issues a notice that no probable cause exists for crediting the allegations of the charge, then the CCRD shall advise the parties that if the charging party wishes to file a civil action in a district court based on the charged conduct, the party must do so within ninety days); § 24–34–306(11), C.R.S.2010 (if the complainant has requested and received a notice of right to sue under § 24–34–306(15), C.R.S.2010, he or she may file a civil action seeking relief under CRA parts 4 through 7 "in the district court for the district in which the alleged discriminatory or unfair practice occurred"); § 24–34–306(14), C.R.S.2010 (subject to certain exceptions, no person may file a civil action in a district court based on CRA parts 4 through 7 without first having exhausted administrative remedies); § 24–34–602(1), C.R.S.2010 (action seeking assessment of fine due to discrimination in a place of public accommodation under CRA part 6 may be filed in "any court of competent jurisdiction in the county where the violation occurred").
- The county courts have *concurrent* jurisdiction with the district courts over claims for damages under the public accommodation provisions of part 6 of the CRA, but damages claims brought in a county court may not exceed the jurisdictional limits of the county courts. § 24–34–603; *Ohmie v. Martinez*, 141 Colo. 480, 483, 349 P.2d 131, 132 (1960) (district and county court jurisdiction is concurrent with respect to matters that fall within the jurisdiction of both).

We reject defendants' contention that, by filing her public accommodation claim in district court, Arnold was limited to seeking injunctive relief or a fine, and she could only have recovered damages had she filed her claim in county court. This contention runs counter to the very notion of judicial economy. We have seen nothing that would reflect a legislative intent to encourage the filing of multiple suits in multiple courts if an aggrieved party seeks more than one kind of relief for the same public accommodation claim, and such a requirement would be absurd, as it could lead to inconsistent rulings on the same claim. *See Adams Reload Co. v. Int'l Profit Assocs., Inc.*, 143 P.3d 1056, 1061 (Colo.App.2005) (judicial economy supports litigation of all related claims in one action); *cf. Hernandez v. Woodard*, 873 P.2d 20, 21 (Colo.App.1993) (res judicata (now known as claim preclusion) doctrine generally precludes a party from splitting a cause of action into separate suits for the same claim).

Despite defendants' acknowledgement that Arnold could have filed an action in district court seeking to recover a fine, defendants nevertheless assert that Arnold would have been limited to obtaining injunctive relief in district court, had she sought such relief. In support of their position that Arnold's remedy would have been limited to equitable relief, defendants cite *Continental Title Co. v. District Court*, 645 P.2d 1310 (Colo.1982), and *Watson v. Public Service Co.*, 207 P.3d 860 (Colo.App.2008). However, because both of those cases were employment discrimination actions brought under a part of the CRA—part 4—that is not the basis of Arnold's suit, they are inapplicable. *See Continental Title Co.*, 645 P.2d at 1316–17 (construing § 24–34–405, C.R.S.2010); *Watson*, 207 P.3d at 865–67 (construing § 24–34–402.5(2)(a), C.R.S.2010).

Defendants also contend that section 24–34–605, C.R.S.2010, limits a plaintiff's

remedies to equitable relief for part 6 claims that are brought in district court. This section provides:

> In addition to the relief authorized by section 24–34–306(9), the commission may order a respondent who has been found to have engaged in a discriminatory practice as defined in this part 6 to rehire, reinstate, and provide back pay to any employee or agent discriminated against because of his obedience to this part 6; to make reports as to the manner of compliance with the order of the commission; and to take affirmative action, including the posting of notices setting forth the substantive rights of the public under this part 6.

This statute provides a remedy to an employee or agent of a respondent who was discriminated against because of the employee's or agent's "obedience to this part 6." Here, any employee or agent referred to in this statute would be an employee or agent of the Association. Thus, this provision is inapplicable to Arnold.

The district court here had jurisdiction to hear Arnold's public accommodation claims under CRA part 6, and therefore it was error for the court to dismiss her CRA claim. We reverse the court's judgment dismissing that claim and remand the claim for further proceedings.

### III. Breach of Contract

Arnold argues that the trial court erred in dismissing her breach of contract claim. We disagree.

### A. Procedural Posture

■ This case has an unusual procedural history. Defendants filed a motion to dismiss Arnold's breach of contract claim very shortly before trial, and the trial court granted the motion without a response from Arnold. However, the court reconsidered its ruling on the morning of trial, and did not confine its review to the specific matters raised in the complaint. Instead, it gave Arnold, who at that point was proceeding pro se, significant leeway to orally define the basis of her breach of contract claim and to specify the documents that supported her claim, none of which were referenced in the complaint. Based on her statements and the representations of defendants, the court determined that the contract was comprised of the Association's articles of incorporation and bylaws, together with sections 7–56–101 to –901, C.R.S.2010 (the Cooperatives Act). Because the trial court considered matters outside the complaint and documents not referenced in the complaint, it essentially treated the motion as one for summary judgment under C.R.C.P. 56, and defendants conceded as much at oral argument. *See* C.R.C.P. 12(b) (if, in considering a motion under C.R.C.P. 12(b)(5), the court considers information outside the complaint, the motion to dismiss must be treated as a motion for summary judgment); *Pub. Serv. Co. v. Van Wyk*, 27 P.3d 377, 386 (Colo.2001) (same). Thus, we apply the standard of review applicable to a summary judgment under C.R.C.P. 56, rather than that applicable to a dismissal under C.R.C.P. 12(b)(5).

### B. Standard of Review

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *McDaniels v. Laub*, 186 P.3d 86, 87 (Colo.App.2008) (citing C.R.C.P. 56(c)). We review a grant of summary judgment de novo. *Id.*

Additionally, we review the interpretation of contract terms de novo. *Edge Telecom, Inc. v. Sterling Bank*, 143 P.3d 1155, 1159 (Colo.App.2006).

### C. Express Contract

Arnold contends the trial court erred in determining that she did not have an express contractual right to purchase goods and services from the Association's store. We disagree.

Arnold argues that the Association's articles of incorporation and bylaws, when read together with the Cooperatives Act, provide her with an express right to purchase goods and services from the Association's store.

It is well established that contracts are "interpreted in light of the intentions of the contracting parties, proven in some cases by ... the requirements imposed by state statute[s]," *Benham v. Pryke,* 744 P.2d 67, 72 (Colo.1987), and the parties here agree that the provisions of the Cooperatives Act form part of the contract.

In addition to Colorado statutes, the trial court and the parties here assumed that the Association's bylaws and articles of incorporation would be the source of any provision that could support Arnold's breach of contract claim. Although Arnold has cited case law indicating that a corporation's charter governed the contractual relationship between a corporation and its stockholders, *Goldman v. Union Bank & Trust,* 765 P.2d 638, 641 (Colo.App.1988), the parties have not briefed the issue of whether a *cooperative's* bylaws and articles of incorporation could form the basis for a breach of contract claim, and we discern no ready answer to this question. *Cf. Paulek v. Isgar,* 38 Colo.App. 29, 31, 551 P.2d 213, 215 (1976) (provision in bylaws is a contract between corporation and shareholders); *Hampton v. Tri–State Finance Corp.,* 30 Colo.App. 420, 426, 495 P.2d 566, 569 (1972) (contract between stockholders and corporation includes terms in the articles of incorporation). Assuming, without deciding, that the bylaws and articles of incorporation constitute a contract with Arnold that could form the basis for a breach of contract claim, we nevertheless conclude she has failed to establish a claim for breach.

▪ Arnold argues that two provisions of the Association's governing documents form the basis for her breach of contract claim. The first, contained in the Association's articles of incorporation, states that "the purposes for which [the Association] is formed are ... (2) to manufacture, sell or supply to its members (and non-member patrons) machinery, equipment, and supplies and to engage in any activity in connection therewith." The second, contained in article I, section 1(b) of the Association's bylaws, states that "[t]he [Association] shall admit to membership every applicant who (1) applies for admission for the purpose of participating in the activities of the cooperative." Neither of these provisions contains an enforceable promise that Arnold will be permitted to continue purchasing goods and services from the Association's store. *See Ad Two, Inc. v. City & County of Denver,* 9 P.3d 373, 376 (Colo.2000) ("Written contracts that are complete and free from ambiguity will be found to express the intention of the parties and will be enforced according to their plain language.").

▪ Arnold emphasizes the legislative declaration in section 7–56–102(1)(a), C.R.S.2010, of the Cooperatives Act that the "cooperative form of doing business provides an efficient and effective method for persons to market their goods and services and to obtain services and supplies." This legislative declaration does not provide Association members with an express right to purchase goods and services from the Association's store and therefore does not support Arnold's breach of contract claim.

▪ To the extent the dissent relies on other contractual and statutory provisions to conclude Arnold raised a valid breach of contract claim, those provisions either were not raised at all on appeal by the parties, or were raised by Arnold's appellate counsel only in oral argument. Therefore, any arguments concerning these provisions were not preserved for our review. *See Bumbal v. Smith,* 165 P.3d 844, 847–48 (Colo.App.2007) (court will not consider arguments raised for the first time in a reply brief or during oral argument); *see also People v. Diefenderfer,* 784 P.2d 741, 752 (Colo.1989) (it is the duty of counsel for appealing party to inform a reviewing court as to the specific errors relied on, as well as the grounds, supporting facts, and authorities therefor).

Because Arnold has identified no express contractual right to enter or purchase from the Association's store, we conclude the trial court did not err in granting the Association's motion for summary judgment regarding her breach of contract claim.

### D. Implied Contract

▪ Arnold next contends that, as an alternative to her express contract claim, the trial court should have implied terms into

the contract or proceeded under a quasi-contract theory to find that she had a right to purchase goods and services from the Association's store. She argues that the very purpose of becoming a member of the Association and the requirement that she pay a membership fee imply that she had a right to purchase goods and services. Defendants contend that Arnold did not raise these arguments before the trial court and, as a result, she cannot now raise them on appeal.

▬ Arnold responds that she preserved these arguments by arguing before the trial court that "the ability to buy and sell agricultural products ... is the crux of the entire contract." According to Arnold, this argument described, in lay terms, an implied contract. This argument did not preserve Arnold's implied term and quasi-contract arguments. Viewed in the light most favorable to Arnold, her statement cannot be construed as a request to imply new contract terms or to allow her to assert a claim based on a quasi-contract theory. Thus, because these arguments were not raised in the trial court, we will not consider them for the first time on appeal. *Estate of Stevenson v. Hollywood Bar & Cafe, Inc.*, 832 P.2d 718, 721 (Colo. 1992) (arguments never presented to, considered by, or ruled upon by a trial court may not be raised for the first time on appeal). In any event, to the extent Arnold sought to have the court rewrite her contract to include a requirement that she be allowed to continue to shop at the Association's store, it could not do so. *See USI Properties East, Inc. v. Simpson*, 938 P.2d 168, 173 (Colo.1997) (courts should not rewrite parties' contracts).

▬ As part of her argument that the trial court should have implied a right in the contract for Arnold to continue to shop at the store, she points to provisions of the bylaws regarding allocation of net margins and investments in equity capital of the Association. "Net margins" are defined in the bylaws as the balance of gross receipts of the Association that remain after certain deductions have been made. Members and participating patrons may accrue net margins in proportion to the quantity or value of goods they buy or sell. Members and other qualified persons may acquire equity capital by

the Association's retaining portions of their allocated shares of net margins. *See* § 7–55–101(1)(a), C.R.S.2010 (describing a cooperative association, in part, as one that distributes its earnings on the basis of the amount of property bought from or sold to members or other patrons); § 7–55–101(1)(b), C.R.S. 2010 (discussing interest on equity capital); *cf. Bontrager v. La Plata Electric Ass'n*, 68 P.3d 555, 562 (Colo.App.2003) (discussing patronage dividends and refunds by cooperative electric associations).

While Arnold made a version of this argument in the trial court and thus arguably preserved it, we disagree with the merits of her contention. The Association's bylaws provide that the cooperative's net margins shall be allocated to its members and other "participating patrons" "on a patronage basis." Arnold relies on this language to effectively argue that because a member's ability to accrue net margins and equity capital depends on the purchase of goods or services from the Association's store, a member must therefore have a right to purchase goods and services from the store. While the bylaws do provide for such an allocation of the Association's net margins, they do not provide members any right to purchase in order to receive net margins.

The right to receive net margins on a patronage basis does not necessarily imply that members have a right to purchase goods and services from the Association's store. Adoption of Arnold's argument would require us to rewrite her contract with the Association, which we cannot do. *See USI Properties East, Inc.*, 938 P.2d at 173.

### E. Special Circumstances Applicable to Cooperatives

▬ Arnold argues that cooperative associations differ from ordinary businesses and that any analysis of cooperative members' rights must necessarily account for the peculiarities of the cooperative structure. While we acknowledge that cooperatives have characteristics that distinguish them from traditional businesses, this circumstance does not relieve Arnold of the burden of demonstrating an express contractual right to purchase

goods and services from the Association's store, and she has not done so.

## IV. Interference with Contract

Because Arnold's interference with contract claim was wholly dependent on her claim for breach of express contract, and the latter claim could not be sustained, we conclude the trial court did not err in granting the Association's motion for summary judgment as to Arnold's interference claim.

## V. Fees and Costs

Arnold also appeals the trial court's award of fees and costs. We agree that the costs award must be reversed, but disagree as to the attorney fees award.

Given our resolution of the issues presented on appeal, we vacate the trial court's ruling on costs. See Rossman v. Seasons at Tiara Rado Assocs., 943 P.2d 34, 38 (Colo. App.1996).

Arnold states that the trial court awarded attorney fees against her "to cover Defendant's costs [sic] of filing motions to compel early in the litigation." However, on appeal, she fails to assert any error in that award. Contrary to her assertion, our reversal of portions of the judgment does not correspondingly entitle her to reversal of that award.

■ We reject Arnold's request for attorney fees on appeal because she has not specified any grounds for such an award. *Travelers Prop. Cas. Co. v. Farmers Insurance Exchange*, 240 P.3d 521, 524–25 (Colo.App. 2010) (under C.A.R. 39.5, if attorney fees are recoverable for an appeal, the party claiming them must specifically request them and state the legal basis therefor).

## VI. Appellate Jurisdiction

■ Defendants argue that we lack jurisdiction to hear this appeal because Arnold filed her notice of appeal more than forty-five days after the final claim was dismissed. We reject this argument.

■ C.A.R. 4(a) provides that "in a civil case ... the notice of appeal required by C.A.R. 3 shall be filed with the appellate court ... within forty-five days of the date of the entry of the judgment, decree, or order from which the party appeals." Under C.A.R. 1(a), a matter is reviewable only if taken from a final judgment. "A final judgment is defined as one which ends the particular action in which it is entered, leaving nothing further for the court pronouncing it to do in order to completely determine the rights of the parties involved in the proceeding." *Stillings v. Davis*, 158 Colo. 308, 310, 406 P.2d 337, 338 (1965). There must be a signed and dated written order for there to be a final judgment. C.R.C.P. 58(a); *In re Marriage of Hoffner*, 778 P.2d 702, 703 (Colo. App.1989).

The trial court dismissed Arnold's first claim on August 3, 2009, and dismissed Arnold's remaining claims on September 4, 2009. Defendants voluntarily dismissed their counterclaim on September 8, 2009. Also on September 8, the trial court reconsidered its September 4, 2009 ruling and upheld that ruling in an oral order.

Defendants argue that the forty-five-day period for appellate review should have begun to run on September 8, 2009. However, the trial court did not enter a written and signed order regarding defendants' voluntary dismissal of their counterclaim until October 5, 2009. The October 5, 2009 order was the final, appealable judgment. Because Arnold filed her notice of appeal within forty-five days of this order, her filing was timely.

The judgment dismissing Arnold's claim under the CRA is reversed, and the case is remanded for further proceedings on that claim. In all other respects, the judgment is affirmed. The trial court's order awarding costs to defendants is reversed, and the order awarding attorney fees is affirmed.

Judge MILLER concurs.

Judge TAUBMAN concurs in part and dissents in part.

Judge TAUBMAN concurring in part and dissenting in part.

I agree with the majority's conclusion in part II of its opinion that district and county courts have concurrent jurisdiction over

claims brought under part 6 of the Colorado Civil Rights Act, sections 24–34–601 to –605, C.R.S.2010. I also agree with the majority's analysis of fees and costs and appellate jurisdiction in parts V and VI, respectively. I write separately, however, because I disagree with the majority's conclusion in part III.A that the trial court did not err in dismissing the breach of express contract claim of plaintiff, April Arnold, against defendants, Anton Cooperative Association (the Association), Chester Kenney, and Louanne Kenney for denying her the right to shop at the Association store. Accordingly, I would reverse that part of the trial court's judgment and remand for further proceedings in which Arnold would have an opportunity to prove her breach of contract claim.

The dual purposes of agricultural cooperatives in Colorado are to provide a mechanism for agricultural producers to market their goods and services and to obtain services and supplies. In my view, the Association's articles of incorporation and bylaws, together with state statutes, establish a contract that entitles Arnold both to market her goods and to shop at the Association's store under the circumstances presented here.

## I. Background

Arnold alleged in her complaint that for approximately nine years she was a member of the Association and bought from its store various materials and supplies for her business and personal use. She alleged that her problems began when Ms. Kenney confronted her in October 2005, asserting that Ms. Kenney did not want to do business with her because Mr. Kenney was seeking to have a relationship with Arnold.

Arnold further alleged that Mr. and Ms. Kenney sought to make it difficult for Arnold to do business with the Association. This worsening relationship, Arnold contended, culminated in an April 2006 letter from Mr. Kenney to Arnold advising her that she could no longer shop at the Association store.

The Association and the Kenneys contend in their answer brief that Arnold's relationship with the Association was professional until May 2004, when Arnold separated from her then husband. Defendants assert that over an extended period of time Arnold's conduct was confrontational and disruptive and that she failed to timely pay her debts to the Association. Defendants maintain that as a result of Arnold's conduct, together with the need to provide a peaceful environment for employees, customers, and the public, the Association sent Arnold a letter in May 2006 requesting that she no longer use the Association's services.

The Association's contentions were based on depositions that were not presented to the district court because it determined that the articles, bylaws, and state statutes did not create an enforceable contract. Consequently, the trial court did not address or resolve the parties' conflicting versions of what led the Association to bar Arnold from shopping at the Association store.

## II. Procedural Anomalies

At the outset, I note two procedural anomalies which make the posture of this case different and complicate the legal analysis of the breach of contract issue.

First, although Arnold was represented by counsel when she filed her complaint and is currently represented by counsel on appeal, she proceeded without counsel when the trial court dismissed her breach of contract claim. Thus, when Arnold was responding to the motion in limine filed by defendants on the eve of trial, she did not have the benefit of counsel. Partly for this reason, the Association correctly notes in its brief that defendants moved to dismiss Arnold's breach of contract claim on September 4, 2009, and the motion was granted that same day by the trial court.

Because of Arnold's difficulties faxing her response to defendants' motion to the trial court, the trial court considered Arnold's authorities four days later, but nevertheless reaffirmed its original dismissal of Arnold's breach of contract claim.

Second, as noted above, the trial court effectively dismissed Arnold's breach of contract claim based on defendants' motion in limine. Because that motion was filed only four days before the scheduled trial date, the normal periods for responding to motions

were not available. *Ogawa v. Riley,* 949 P.2d 118, 119 (Colo.App.1997) (under C.R.C.P. 121 § 1–15(1), party has fifteen days to respond to motions involving a contested issue of law unless court provides for greater or lesser time to respond).

Indeed, on September 8, the parties and the court were confused as to whether the court had received Arnold's faxed response to defendants' motion to dismiss. Further, Arnold stated that she did not receive the court's faxed order on September 4, but only received it over the weekend prior to trial, when it was faxed to her by defendants' counsel.

More significantly, the confused procedure which led to the dismissal of Arnold's breach of contract claim has extended to the standard of review on appeal with respect to this issue. The parties have addressed the standard of review based on the trial court's granting a motion to dismiss under C.R.C.P. 12(b)(5). However, that standard is clearly not applicable, as Arnold's counsel conceded during oral argument, in part because the complaint alleged that Arnold had been terminated as a member of the Association, while the Association's counsel stated to the trial court that she was still a member. Further, the trial court went beyond the four corners of the complaint, considering the articles of incorporation and bylaws to determine whether Anton's contractual rights had been violated. *Schwindt v. Hershey Foods Corp.,* 81 P.3d 1144, 1148 (Colo.App.2003) (motion to dismiss based on C.R.C.P. 12(b)(5) must be decided based on "matters within the four corners of the pleading").

### III. Standard of Review

Given the circumstances described above, it appears that defendants' motion in limine

was the functional equivalent of a motion for summary judgment. *See Geiger v. American Standard Ins. Co.,* 192 P.3d 480, 482 (Colo. App.2008) (standards for summary judgment motion). Accordingly, I agree with the majority that we may use the summary judgment standard here in addressing Arnold's breach of contract claim, particularly given Arnold's lack of objection to the procedure in the trial court and the lack of material facts in dispute. *See* C.R.C.P. 56(c).

### IV. Breach of Contract Claim

Arnold contends that the trial court erred in dismissing her breach of contract claim.[1] I agree.

### A. Standard of Review

I agree with the majority that a reviewing court interprets contract terms de novo. *Edge Telecom, Inc. v. Sterling Bank,* 143 P.3d 1155, 1159 (Colo.App.2006).

### B. Basis for Contract

As the majority notes, the trial court and the parties assumed that the Association's articles of incorporation and bylaws and the state statutes would provide the source of Arnold's breach of contract claim.[2] Although no published Colorado appellate case has so held, this conclusion is consistent with *Southeastern Colorado Cooperative v. Ebright,* 38 Colo.App. 326, 563 P.2d 30 (1977), where a division of this court considered a cooperative's bylaws to determine the rights of coop members. As one treatise noted,

> Once a cooperative is formed, the relationship between the cooperative and its members is defined by several sources including state law and the cooperative's bylaws

---

1. Although Arnold's complaint only alleged a claim for breach of contract, defendants asserted that she had not stated a claim for breach of an express contract or breach of an implied contract. Because I agree that Arnold adequately stated a claim for breach of an express contract, I do not address the issue of breach of an implied contract. However, because I believe that Arnold stated a claim for breach of contract, I would also reverse the dismissal of her derivative claim for interference with contract.

2. Although Arnold does not rely on her Membership Certificate, that document appears to establish a contract between her and the Association. It provides that in return for her payment of the required $10 membership fee, she "is a member of the ANTON COOPERATIVE ASSOCIATION ... and as such is entitled to the rights and privileges of membership and is likewise bound by and subject to the obligations and conditions pertaining thereto, all as set forth in the articles of incorporation and bylaws thereof, now or hereafter in effect."

and articles of incorporation. Under the common law of most states, the bylaws are deemed to create a contractual relationship between the cooperative and its members. Charles T. Autry & Roland F. Hall, *The Law of Cooperatives* § V.E., at 68 (American Bar Association 2009).

Additionally, in other contexts, state statutes are incorporated into private contracts. *See* § 4–2–314(1), C.R.S.2010 (a warranty that goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind); § 4–2–315, C.R.S.2010 (for certain contracts there may be an implied warranty that goods shall be fit for a particular purpose); *Benham v. Pryke*, 744 P.2d 67, 72 (Colo.1987) (contracts must be interpreted by the requirements imposed by state statute); *Ortiz v. Hawkeye–Security Ins. Co.*, 971 P.2d 233, 235 (Colo.App.1998) (the No–Fault Act was incorporated into every insurance policy issued in Colorado).

Accordingly, I conclude that the trial court properly determined that state statutes, the articles of incorporation, and the bylaws form the basis for any contract between a cooperative and one of its members.

### C. Scope of Review

To adequately preserve an issue for appeal, the grounds on which the objection is made must be reasonably apparent to the trial court. *Blades v. DaFoe*, 704 P.2d 317, 322, 323 (Colo.1985) (court considered plaintiffs' objections to peremptory challenges notwithstanding that they did not cite C.R.C.P. 47(h)); *BS & C Enterprises, L.L.C. v. Barnett*, 186 P.3d 128, 130 (Colo.App.2008) (court addressed defendant's argument regarding motion to set aside default judgment, even though he did not cite C.R.C.P. 55(b), concluding that his argument "sufficed to focus the trial court's attention on the correct issue"); *see also Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1008 (Colo.2008) (although appellate courts generally do not address issues raised for the first time on appeal, court addressed unpreserved legal issue of contract construction where no material facts were in dispute).

Because the parties and the trial court agreed that the articles of incorporation, bylaws, and state statutes constituted the basis for Arnold's breach of contract claim, these sources were subsumed within Arnold's comment at the September 8 hearing, "I guess, you know, I assumed that, you know, if you're going to become a member of a coop that has the ability to buy and sell agricultural products, that is the crux of the entire contract, is your ability to be able to, do that." [3]

Accordingly, in the substantive analysis below, I rely on portions of the articles of incorporation, bylaws, and statutes specifically relied on by Arnold, as well as on other provisions she did not cite specifically, because the basis for Arnold's contention was reasonably apparent to the trial court.

### D. Enforceable Contract Exists

I agree with Arnold that the trial court erred in concluding that the articles of incorporation, bylaws, and state law did not give her an enforceable right to purchase goods and services from the Association.

Familiar principles guide the question of contract interpretation. Contract interpretation is a question of law for the court to decide, and matters of contract interpretation are reviewed de novo. *Copper Mountain, Inc. v. Industrial Systems, Inc.*, 208 P.3d 692, 697 (Colo.2009). The primary goal of contract interpretation is to determine and effectuate the intent and reasonable expectations of the parties. *Thompson v. Md. Cas. Co.*, 84 P.3d 496, 503 (Colo.2004). The primary source of contractual intent is the language of the contract itself. *Ad Two, Inc. v. City & Cty. of Denver*, 9 P.3d 373, 376 (Colo. 2000).

When a contract is set forth in more than one instrument, the documents must be construed together to determine the parties' intent as if the entire agreement were con-

---

**3.** Arnold relies on this statement in support of her claim for breach of express contract, as well as her claim for breach of an implied contract.

The majority discusses this statement in connection with the implied contract claim.

tained in a single document. *Bledsoe v. Hill,* 747 P.2d 10, 12 (Colo.App.1987).

I begin by examining pertinent provisions of state law, which establish the context for consideration of the articles of incorporation and bylaws.

Section 7–56–102(1)(a), C.R.S.2010, the legislative declaration of the Colorado Cooperative Act, sections 7–56–101 to –901, C.R.S. 2010, provides in relevant part:

> The General Assembly finds and declares that ... [t]he cooperative form of doing business provides an efficient and effective method for persons to market their goods and services and *to obtain services and supplies* and it is in the best interests of the people of the state of Colorado to promote, foster, and encourage the utilization of cooperatives in appropriate instances.

(Emphasis added.)

Similarly, section 7–56–209(1), C.R.S.2010, provides, with respect to agricultural marketing cooperatives, such as the Association, "that the public interest demands that producers of agricultural products be encouraged to attain a more efficient system of marketing their products and *procurement of the necessary equipment and supplies through cooperatives.*" (Emphasis added.)

Thus, the twin purposes of agricultural marketing cooperatives are to provide a mechanism for members to market their agricultural products and to provide a means for members to purchase equipment and supplies from the cooperative.

Additionally, section 7–56–301(1), C.R.S. 2010, specifically relied on by Arnold, provides in relevant part that subject to the provisions of this section and the terms of the articles of incorporation and bylaws, "a cooperative may limit admission as members ... only to persons engaged in a particular business or utilizing the goods or services provided by or through the cooperative," or "may admit as members ... any person meeting uniform terms or conditions stated in [the] articles or bylaws." In addition, the statutory provision concerning bylaws, section 7–56–208(3)(a), C.R.S.2010, provides that the bylaws of a cooperative shall include "[t]he qualifications for membership ... and conditions for suspension, withdrawal, or expulsion."

I conclude that, together with these statutory provisions, the articles of incorporation and the bylaws provide an enforceable contract that entitles Arnold to purchase goods and supplies at the Association's store.

The sixth article provides: "This Association shall be operated on a cooperative basis for the mutual benefit of its members as producers, and membership in the Association shall be restricted to producers, *who shall patronize the Association.*" (Emphasis added.) Thus, the Association exists for the mutual benefit of its members as producers. Based upon the legislative declaration noted above, the purposes of an agricultural coop are to assist agricultural producers in marketing their produce and to provide a means for them to obtain goods and services. Because the sixth article provides that members "shall patronize the Association," the articles provide an enforceable right for them to benefit as members of the Association.

This is clear from the statutory definition of the word "patron": a person "who may, but need not, be a member of a cooperative who utilizes the services of the cooperative through the purchase or sale of property or services to or from the cooperative." § 7–56–103(13), C.R.S.2010. Therefore, one who patronizes the Association is one who utilizes its services to buy or sell property to or from the Association.

To the extent a member of the Association is not permitted to obtain goods from the Association store, that person is unable to obtain the full benefit of membership in the cooperative.

This conclusion is consistent with the four provisions of the bylaws on which Arnold relies. First, article 1, section 1(a) provides that any agricultural producer who sells products or buys supplies handled by or through the cooperative, who agrees to purchase a membership certificate for ten dollars, who meets such other uniform conditions as prescribed by the board of directors, and who agrees to abide by such rules and regulations of the cooperative as established

by the members or the board of directors, may apply for admission as a member of the cooperative. There is no question here that Arnold satisfied the qualifications for membership and has been a member of the Association for many years.

Second, article 1, section 1(b) provides that the Association shall admit to membership every applicant who satisfies the above conditions. Significantly, this section provides that the Association may refuse admission to an applicant if the board of directors finds, "based on reasonable grounds, that the applicant's admission would prejudice the interests, hinder or otherwise obstruct, or conflict with any purpose or operation of the cooperative." However, this provision does not address the suspension or limitation of rights of a member of the Association.

Third, article 1, section 3(c) provides for termination of membership in the Association in specified circumstances including, as relevant here, if the board of directors finds that a member has ceased using the cooperative's facilities or services for a period of three years. Although the board of directors conceivably could terminate Arnold on this basis, because she has not been able to purchase items at the Association's store for more than three years, it has not yet chosen to do so. Significantly, while this provision discusses the Association's right to suspend a member's voting right, it does not provide for suspending the right of a member to shop at the Association's store.

Fourth, article 1, section 3(e) concerns a member's entitlement to repayment of his or her equity capital following withdrawal or termination of membership. This provision relates to Arnold's contention that the payment of equity capital to her has been severely limited because of her inability to shop at the Association's store.

In addition, while the bylaws provide qualifications for membership and grounds for termination of membership in the Association, neither the articles nor the bylaws set forth conditions for suspension, withdrawal, or expulsion, as required by section 7–56–208(3)(a). If such provisions existed, Arnold would have been on notice of specified grounds for suspension of her right to shop at the Association's store, as well as the length of such suspension. Instead, she has effectively been suspended from using the Association's store for more than five years.

In sum, the Colorado statutes, together with the Association's articles and bylaws, provide an enforceable right for Arnold to shop at the Association's store. This conclusion is supported by the discussion in the treatise, *The Law of Cooperatives*, regarding the differences between members of a cooperative and corporate shareholders. The treatise notes that "unlike a shareholder who can be an owner without being a consumer of the corporation's products and services, one cannot be an owner of a cooperative without also being a consumer of the cooperative's products or services." *The Law of Cooperatives*, § 5(A)(1), at 54. Further, the treatise notes that unlike shareholders, who are interested in obtaining a profit, a cooperative member's objective is not economic return, even though he or she may be entitled to receive patronage refunds when cooperative revenues exceed costs. Rather, ownership focuses on the acquisition of the services or goods provided by the cooperative. *Id.*

Thus, the very essence of cooperative membership includes the right to purchase goods from the cooperative's store.

While the Association's board of directors could have promulgated bylaws or rules and regulations concerning the suspension or forfeiture of rights of members in particular situations, it has not done so. Consequently, Arnold has been prevented for some five years from shopping at the Association's store, without any express provision authorizing the board to limit her membership rights.

For the reasons stated, I conclude that Arnold has established a valid claim for breach of contract and, therefore, I would reverse the trial court's judgment in that regard and remand for further proceedings on her claims for breach of contract and interference with contract.