2014 COA 150

**STATE of Colorado, EX REL. John W. SUTHERS, Attorney General, and Julie Ann Meade, Administrator, Uniform Consumer Credit Code, Plaintiffs–Appellants and Cross–Appellees**

v.

**JOHNSON LAW GROUP, PLLC, a Florida private limited liability company, and Clint L. Johnson, Defendants–Appellees and Cross–Appellants.**

**Court of Appeals No. 13CA0658**

Colorado Court of Appeals, Division II.

Announced November 6, 2014

---

962

John W. Suthers, Attorney General, Jeanine M. Anderson, Senior Assistant Attorney General, Nikolai N. Frant, Assistant Attorney General, Denver, Colorado, for Plaintiffs–Appellants and Cross–Appellees

Bullock Law, L.L.C., Timothy Bullock, Castle Rock, Colorado; Richard G. Elie, Fort Lauderdale, Florida, for Defendants–Appellees and Cross–Appellants

Opinion by JUDGE ROMÁN

¶ 1 In this action under the Uniform Debt–Management Services Act (DMSA), sections 12–14.5–201 to –242, C.R.S.2014, we are asked to determine whether the legal services exception in the DMSA implicates subject matter jurisdiction. Plaintiff, the State of Colorado, appeals the district court's order dismissing its complaint against defendants, Johnson Law Group, PLLC, a Florida private limited liability company, and Clint L. Johnson, for lack of subject matter jurisdiction. Defendants cross-appeal the district court's order denying attorney fees. Because we conclude that the legal services exception, section 12–14.5–202(10)(A), C.R.S. 2014, does not implicate subject matter jurisdiction, and we conclude defendants did not timely assert that defense, we reverse the district court's order and remand with directions. Based on this conclusion, we deem defendants' cross-appeal for attorney fees and costs moot.

1. The DMSA was amended in 2011. *See* Ch. 297, sec. 1, § 12–14.5–202, 2011 Colo. Sess. Laws 1586. However, there is no dispute that

## I. Uniform Debt–Management Services Act

¶ 2 The DMSA was enacted in 2008 to regulate all debt-management services in Colorado.[1] It requires that all providers of debt-management services apply to an administrator designated by the attorney general and supply detailed information, including financial statements, a description of the applicant's financial analysis and initial plan, copies of client agreements, and a schedule of fees and charges. § 12–14.5–206, C.R.S.2014; *see also* 12–14.5–202(1), C.R.S.2014 (The "administrator" is "the assistant attorney general designated by the attorney general."). Providers must also submit a fee, a bond, and an identification of all trust accounts. § 12–14.5–205, C.R.S.2014.

¶ 3 If the application is approved by the administrator, the provider is subject to numerous rules and regulations controlling the debt-management services client relationship, including the fees that can be charged to clients. § 12–14.5–223, C.R.S.2014. The administrator may enforce compliance with the DMSA by ordering the violators to cease and desist, prosecuting a civil action, and recovering restitution or civil penalties. § 12–14.5–233, C.R.S.2014.

¶ 4 DMSA defines "debt-management services" as "services as an intermediary between an individual and one or more creditors of the individual for the purpose of obtaining concessions...." § 1214.5–202(10)(A). As applicable here, debt-management services do not include, "[l]egal services provided in an attorney-client relationship by an attorney...." § 12–14.5–202(10)(A)(i).

## II. Defendants' Practice

¶ 5 Johnson is an attorney who, in 2006, was licensed to practice law in Florida. His practice included personal injury, criminal defense, and family law. In 2008, he added a debt-management services practice that extended to approximately forty-two states.

the 2008 version of the statute governs this appeal.

¶ 6 Johnson's practice included two types of debt management services for unsecured debt. The first type—debt management plans—involved plans that eliminated or reduced late and other fees, as well as significantly lowered interest rates. As part of this service, clients were placed on set payment plans and paid the entire principal balance of the debt over time.

¶ 7 The second type of debt management service—debt settlement plans—involved negotiating with third parties for settlement of debt for a lesser amount. The goal was to reduce the principal balance. As part of this plan, the client did not pay the entire principal balance. However, the client could often take advantage of mass settlements with other clients. To accomplish this, clients made payments into a trust account until an agreement with the creditor was reached.

### III. Procedural History

¶ 8 In 2011, plaintiff filed a complaint against defendants asserting violations of the DMSA and the Colorado Consumer Protection Act (CCPA), sections 6–1–101 to –1121, C.R.S.2014. The district court granted partial summary judgment to the plaintiff on May 16, 2012, finding that defendants (1) were subject to regulation under the DMSA; (2) failed to register with the administrator as required by the DMSA; (3) charged clients excessive fees; (4) failed to provide clients with required cautionary disclosures; (5) provided clients with agreements that did not properly limit defendants' authority to settle debts; and (6) failed to comply with the DMSA procedures for terminating agreements, providing refunds, and cancellation. It entered a permanent injunction against defendants, prohibiting them from providing debt-management services to Colorado residents and from engaging in deceptive trade practices. The district court awarded restitution to plaintiff in the amount of $783,447.43.

¶ 9 The trial management order, approved by the trial court on November 6, 2012, stated, "[t]he remaining issue for trial therefore is the amount of penalties that are to be assessed against defendants under the DMSA and the CCPA."

¶ 10 Prior to December 2012, defendants did not assert the legal services exception in any pleading. On December 5, 2012, just before trial, a Florida attorney moved for admission pro hac vice to represent defendants, who had been representing themselves. Defendants then filed a corrected and amended motion for determination of questions of law pursuant to C.R.C.P. 56(h). In the motion, defendants asserted for the first time that they were exempt from the DMSA based on the legal services exception.

¶ 11 Trial to the court commenced on December 19. When defendants attempted to raise the legal services exception as a defense, the district court prevented them from doing so:

I'm not going to turn this trial into a fact finder endeavor, regarding whether or not Mr. Johnson was providing legal services or not to 13,000 people. Because the facts are potentially complicated and potentially nuanced, and that's not an issue that's any more before me, at least properly before me. It's clear that your defense, [counsel], in part, is that this was all done in good faith. What I'd like to have both of you guys, or have this witness explain, by way of questions, is how it is that his position changed from providing debt services, debt management services, debt settlement services, budget management services, whatever you want to call it. To somehow morphing that into "I'm providing legal services on the eve of this trial and therefore I'm exempt from any kind of regulation." There is a clear record that Mr. Johnson did not assert that he was exempt. In fact, it can easily be gleaned that he thought he was not exempt and that the issue with him and the State of Colorado was over the amount of restitution that was being claimed by the State.

. . .

And most importantly, in this case, this whole legal exemption, comes up on the eve of trial.

. . .

And you're trying to bootstrap these letters [from Mr. Johnson to the assistant attorney general] as to being somehow no-

tice to the State of Colorado that he was asserting the, the attorney practicing law exemption. Well, it's, I'm not buying that. So, bottom line I guess to what I've said is, [counsel], I am gonna sustain the objection. *I don't want to hear any more about the, whether Mr. Johnson was quote unquote practicing law or not. I'm not going to get into it.*

(Emphasis added.)

¶ 12 Despite advising the parties that it was not going to consider the legal services exception as a defense, the district court later entered a written order concluding that the legal services exception was jurisdictional and thus defendants were not subject to DMSA regulation. Based on this conclusion, the district court vacated its earlier summary judgment and dismissed the complaint. However, the court denied defendants' motion for attorney fees and costs.

¶ 13 On appeal, plaintiff contends that the district court erred in dismissing its complaint for lack of subject matter jurisdiction. We agree and hold, as a matter of first impression, that the legal services exception in the DMSA does not implicate subject matter jurisdiction, and, therefore, can be waived if not timely asserted as an affirmative defense. We further hold that defendants waived any legal services exception defense here.

### IV. Subject Matter Jurisdiction

¶ 14 Whether a court has subject matter jurisdiction is a legal question that we review de novo. *In re J.C.T.*, 176 P.3d 726, 729 (Colo.2007); *BDG Int'l, Inc. v. Bowers*, 2013 COA 52, ¶ 9, 303 P.3d 140.

¶ 15 "Subject matter jurisdiction is a 'court's power to resolve a dispute in which it renders judgment.'" *J.C.T.*, 176 P.3d at 729 (quoting *Trans Shuttle, Inc. v. Pub. Utils. Comm'n of State*, 58 P.3d 47, 49–50 (Colo.2002)). The determination of whether a court has subject matter jurisdiction "is generally only dependent on the nature of the claim and the relief sought." *Trans Shuttle, Inc.*, 58 P.3d at 50. "If a court does not have power to resolve a dispute, then it does not have subject matter jurisdiction

over the claim." *SR Condos., LLC v. K.C. Constr., Inc.*, 176 P.3d 866, 870 (Colo.App. 2007).

¶ 16 The Colorado Constitution vests district courts with general jurisdiction, giving them original jurisdiction in all civil cases. Colo. Const. art. VI, § 9; *Arnold v. Anton Coop. Assoc.*, 293 P.3d 99, 103–04 (Colo.App. 2011).

¶ 17 Conversely, the Colorado Supreme Court "'has the exclusive jurisdiction over attorneys and the authority to regulate, govern, and supervise the practice of law in Colorado to protect the public.'" *People v. Kanwal*, 2014 CO 20, ¶ 6, 321 P.3d 494 (quoting *Colo. Supreme Court Grievance Comm. v. Dist. Court*, 850 P.2d 150, 152 (Colo.1993)).

¶ 18 The General Assembly has the power to limit courts' subject matter jurisdiction, but the limitation must be explicit. *Wood v. People*, 255 P.3d 1136, 1140 (Colo. 2011); *Arnold*, 293 P.3d at 104. And "the mere fact that a statute creates a mechanism for disposing of a prosecution does not necessarily mean that it implicates subject matter jurisdiction." *Wood*, 255 P.3d at 1140. For example, when the district court must determine whether a statutory exception or defense is applicable, that determination typically does not bar the suit, but rather provides relief from liability. *See City of Lakewood v. Brace*, 919 P.2d 231, 245–46 (Colo.1996) (an employee's qualified immunity under the governmental immunity act is an affirmative defense rather than a jurisdictional issue because it is immunity from liability, not immunity from suit).

¶ 19 Here, the DMSA contains no explicit limitation of jurisdiction. *See Arnold*, 293 P.3d at 104. Nor does it "indicate[ ] any legislative intent to condition the court's subject matter jurisdiction on whether" a defendant is excluded under the legal services clause. *See Wood*, 255 P.3d at 1140; *cf. Tarco, Inc. v. Conifer Metro. Dist.*, 2013 COA 60, ¶ 28, 316 P.3d 82 (section 24–10–109(1), C.R.S.2014, provides a "jurisdictional prerequisite" and thus is facially clear that "noncompliance poses an absolute bar to recovery" (internal quotation marks and emphasis omitted)).

¶ 20 The district court, as a court of general jurisdiction, had the authority to determine whether the legal services exception applied, and, thus, it had the authority to deal with the issue and resolve the dispute. *See U.S. Taekwondo Comm. v. Kukkiwon,* 2013 COA 105, ¶¶ 33, 35, —— P.3d —— (the act of state doctrine does not provide immunity from suit, and, therefore, it does not present an issue of subject matter jurisdiction but rather a substantive defense on the merits); *SR Condos., LLC,* 176 P.3d at 870 (the district court had the authority to determine the validity of a mechanic's lien and to apply the spurious liens and documents statute); *see also Kinderknecht v. Persels & Assocs., LLC,* 470 B.R. 149, 167–68 (Bankr. D.Kan.2012) (in bankruptcy case addressing the attorney exemption of the Kansas Credit Services Organization Act, concluding that summary judgment was not appropriate where a factual dispute remained ·regarding whether the attorney was practicing law under the statute).

■ ¶ 21 Finally, contrary to defendants' contention, assertion of a claim against attorneys under the DMSA does not automatically present a separation of powers problem. An attorney can be found liable for violation of a statute enacted by the General Assembly so long as it does not "interfere with [the supreme court's] exclusive right to determine the rules governing admission to the bar or under which attorneys [are] disciplined." *Crowe v. Tull,* 126 P.3d 196, 206· (Colo.2006) (prosecuting attorneys· for deceptive trade practices does not violate the separation of powers doctrine).

## V. Affirmative Defense

■ ¶ 22 Having concluded that the legal services exception does not implicate subject matter jurisdiction, we agree with plaintiff that the legal services exception in the DMSA is an affirmative defense.

■ ¶ 23 An affirmative defense is "[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all allegations in the complaint are true." *Black's Law Dictionary* 482 (9th ed.2009); *see State v. Nieto,* 993 P.2d 493, 507 (Colo.2000) (quoting *Black's Law Dictionary* 60 (6th ed.1990)); *Dinosaur. Park Invs., L.L.C. v. Tello,* 192 P.3d 513, 516 (Colo.App.2008).

¶ 24 The official comments prepared by the Commissioners on Uniform State Laws explain that the legal services exception to the uniform act, after which the DMSA was modeled, does not apply in all circumstances:

> This definition excludes professional services provided by attorneys or certified public accountants, but only if the attorney is licensed or otherwise authorized to practice in this state or the accountant is licensed by this state. . . .

> The exclusion applies only if the services are rendered in an attorney-client, accountant-client, or financial planner-client relationship. Thus it does not suffice that the owner of a provider is an attorney, an accountant, or a financial planner. The attorney, accountant, or financial planner must be providing legal, accounting, or financial-planning services, respectively, to a client. Unless the services as an intermediary are provided in the course of providing legal, accounting, or financial-planning services, the exclusion does not apply, and the attorney, accountant, or financial planner is providing debt-management services and must comply with the Act.

Unif. Debt–Management Services Act § 2, 7A U.L.A. 107 cmt. 10 (Supp.2005).

¶ 25 The legal services exception is a not a "mere denial of an element" but rather an assertion that would defeat the claim notwithstanding plaintiff's ability to prove the elements of the claim. Therefore, it is an affirmative defense. *See Tello,* 192 P.3d at 516; *Paratransit Risk Retention Grp. Ins. Co. v. Kamins,* 160 P.3d 307, 319 (Colo.App. 2007) (concluding that safe harbor defense in Colorado Business Corporation Act was an affirmative defense because, if successful, it would allow defendants to avoid liability).

## VI. Failure to Timely Assert the Legal Services Exception

■ ¶ 26 Next, we conclude that because the legal services exception affirmative defense was not timely asserted by defendants, nor actually tried before the district court,

the district court could not render judgment on the affirmative defense because it was waived.

¶ 27 An affirmative defense is deemed waived if it is not asserted in a party's responsive pleading. *Crocker v. Colo. Dep't of Revenue,* 652 P.2d 1067, 1070–71 (Colo.1982); *Tello,* 192 P.3d at 517. And "[w]here, as here, a defense or claim is not pleaded or intentionally and actually tried, a court cannot render a judgment thereon." *Tello,* 192 P.3d at 518.

¶ 28 Although the district court did not specifically use the term "waiver" when it precluded the legal services exception defense during trial, it made several findings supporting a waiver. First, the district court found that defendants' position changed · on the eve of trial. Second, it found that plaintiff had insufficient notice that defendants were asserting the defense.

¶ 29 Additionally, in its written order, the district court found that "in their response [to plaintiff's motion for summary judgment], defendants admitted to many key facts and liability was essentially conceded," and that the evidence established that Johnson maintained his position that he was not practicing law in Colorado up until the day of trial.

¶ 30 Most significantly, the district court sustained plaintiff's objection and stated that it did not "want to hear any more about" the defense and that it was not "going to get into it."

¶ 31 The trial court also found "Johnson's credibility ... nonexistent," explaining that he "testified under oath in two different legal proceedings (Florida and Colorado) 180 degrees different from one to the other." The district court continued, "[i]t appears that [Johnson] was following easy money without paying proper attention to his legal responsibilities regarding conflicts of interest."

¶ 32 Under these circumstances, where the legal services defense was not asserted in defendants' responsive pleading or intentionally and actually tried, we conclude this defense was waived. To hold otherwise would allow defendants to avoid the consequences of their failure to plead the defense. *Id.* Additionally, allowing defendants to proceed with the defense at such a late date would substantially prejudice plaintiff because plaintiff lacked sufficient notice that the legal services exception defense would be tried and was deprived of the opportunity to structure its case to counter the new defense. *See id.* at 518–19 (trial court erred in allowing the defendant to amend its answer post-trial after it refused to allow defendant to raise an unpleaded affirmative defense at trial, and the plaintiff suffered substantial prejudice because it was deprived of the opportunity to counter the affirmative defense); *see also Blood v. Qwest Servs. Corp.,* 224 P.3d 301, 329 (Colo.App.2009) (affirmative defense waived where the defendant failed to mention it during trial, and, therefore, plaintiff had no reason to present evidence to rebut it and the jury did not decide the issue), *aff'd,* 252 P.3d 1071 (Colo.2011).

¶ 33 In so concluding, we reject defendants' contention that plaintiff invited any error by presenting "copious amounts of evidence that appellees were a lawyer and a law firm." Instead, plaintiff was unable to counter defendants' argument at trial that he qualified for the legal services exception.

¶ 34 Finally, within their argument that the legal services exception is jurisdictional, defendants also assert that plaintiff lacked standing to bring the suit against them. However, defendants do not assert that the assistant attorney general lacked standing as the administrator of the DMSA to bring suit. Instead, they claim that the assistant attorney general cannot prosecute claims that fall under the legal services exception. Because we conclude that the exception is not jurisdictional and was not timely asserted as an affirmative defense, we likewise reject this argument.

## VII. Conclusion

¶ 35 Given our resolution of this issue, we need not address plaintiff's remaining contentions. Defendants' cross-appeal for attorney fees and costs is rendered moot. *See Schaffer v. Colo. Dep't of Soc. Servs.,* 759 P.2d 837, 839 (Colo.App.1988) (judgment in the plaintiff's favor was reversed, rendering

her cross-appeal concerning attorney fees moot).

¶ 36 The order dismissing the action is reversed and the case is remanded to the district court for a determination of penalties to be assessed against defendants.

JUDGE CASEBOLT and JUDGE GABRIEL concur.