536 P.2d 863 (1975)
VLN CORPORATION, doing business as Bohn Rex-Rotary, Plaintiff-Appellant,
v.
AMERICAN OFFICE EQUIPMENT COMPANY, a Colorado Corporation, Defendant-Appellee.
No. 74-237.
Colorado Court of Appeals, Div. III.
April 22, 1975.
Rehearing Denied May 13, 1975.
Certiorari Denied June 23, 1975.
*864 Swenson & Pickens, Thomas H. Pickens, Benjamin E. Sweet, Lakewood, for plaintiff-appellant.
*865 Mellman, Mellman & Thorn, P. C., Douglas W. Johnson, Denver, for defendant-appellee.
Not Selected for Official Publication.
RULAND, Judge.
This action arises out of a series of sales transactions governed by the Uniform Commercial Code, § 4-1-101 et seq., C.R.S. 1973 (C.R.S.1963, § 155-1-101) (hereinafter cited by section number). Plaintiff, VLN Corporation, doing business as Bohn Rex-Rotary (Bohn), appeals from a judgment for defendant American Office Equipment Company (American), on its counterclaim. We affirm in part and reverse in part.
Bohn was the national sales distributor for a photocopy machine known as the Bohn RR-4500. American was engaged in the retail sale and service of photocopy machines in Colorado as well as the sale of supplies and accessories therefor.
Viewing the evidence in a light most favorable to American as the successful party below, Feit v. Zoller, 155 Colo. 64, 392 P.2d 593, the record reflects the following events. At various times during 1971 American purchased photocopy machines and supplies from Bohn. Beginning in March, American began placing Bohn's photocopy machine with its customers. Some placements were made pursuant to direct sales. In other instances, sales were handled through a finance company which paid American and financed the purchase by the customer pursuant to a note and contract described as a "lease purchase" agreement. A few machines were placed by American on a per copy rental basis.
After the machines had been in operation for from one to three months, significant problems developed from faulty design and mechanical defects, and American received numerous complaints about the machines. Handling these complaints required five to 10 times as much service as for other comparable machines in the trade, and the service required was for major adjustments. As a practical matter, within a year the machines become inoperable. American attempted to rebuild some of the equipment; however, the machines still failed to perform and continued to require many service calls.
Several of American's customers demanded that the machines be removed within a year or less after acquisition thereof. In some instances American replaced the machines at no cost to the customer; in at least one instance a competitor replaced the machine and in two instances took over the account with American's customer. American also assumed the outstanding obligation of some of its customers to the finance company. At the time of trial only nine machines remained with American's customers, at least some of which it had rebuilt. One machine had been returned to Bohn and apparently credited to American's account. The remaining machines were stored by American.
Beginning in May 1971 and continuing thereafter through January 1972, American orally notified Bohn of difficulties experienced with the machines and requested that Bohn remedy the defects. Sometime in November or December 1971, American was told that the machines would be modified and that those that would not function would be replaced by Bohn. On this basis, American agreed to execute four interest bearing promissory notes to Bohn for a total of $7,771.36, payable in January, February, March, and April 1972. In January 1972, American also issued a check in the amount of $2,000 to Bohn. Then Bohn informed American that the equipment would not be modified or replaced, whereupon American informed Bohn that it would not honor the promissory notes and stopped payment on the check.
The present action was initiated by Bohn for recovery on the four promissory notes and the stop-payment check. By its answer, American denied any obligation to pay for reasons unconnected with the issues of this appeal and counterclaimed for damages in the amount of $50,000, alleging a breach of warranty in the sales.
*866 Following a trial to the court, the court awarded Bohn $11,148.16 on the promissory notes and check, together with interest. It found damages for American in the amount of $27,800, and pursuant thereto, entered judgment for American for the difference of $16,651.84.
Insofar as pertinent here, the court's findings relative to American's counterclaim may be summarized as follows: (1) The Bohn-Rex RR-4500 model was defective and not suitable for the purpose for which it was intended or represented and the machines were not suitable for the ordinary purpose for which such goods are used; (2) American, in effect, notified Bohn on numerous occasions that the machines were not functioning as warranted; (3) American sustained a loss of customers and of sales, thereby suffering a loss of profits as well as expenses incurred in replacement of the machines in an attempt to mitigate damages; and (4) profits lost were proximately caused by Bohn's breach of warranty and were foreseeable.

I. Liability
On this appeal Bohn asserts that American failed to establish the elements necessary for recovery on a breach of warranty theory. We disagree and affirm the trial court relative to Bohn's liability.
Bohn's first contention is that a buyer must accept the goods before seeking to recover on a breach of warranty theory and that American is precluded from such recovery because it revoked its acceptance pursuant to § 4-2-608. In support thereof, Bohn relies on the contents of a letter from American's counsel which suggests that American was revoking its acceptance of the machines as well as the action of American in stopping payment on the check. This contention is without merit.
Bohn's judgment for the purchase price of the machines is premised upon American's acceptance of the photocopy machines as creating a contractual obligation to pay therefor. Bohn may not affirm the contract for the purpose of recovering the purchase price and contend that the contract was revoked for the purpose of precluding American's claim for breach of warranty. See Gerbaz v. Hulsey, 132 Colo. 359, 288 P.2d 357; Tayyara v. Stetson, 30 Colo.App. 250, 492 P.2d 73.
Bohn next contends that American failed to prove the nature and existence of a warranty on the machines. In support of this contention, Bohn interprets American's counterclaim to allege only a breach of warranty of fitness for a particular purpose pursuant to § 4-2-315. However, contrary to Bohn's contentions, American's counterclaim alleged both a breach of implied warranty of merchantability and a breach of implied warranty of fitness for a particular purpose. And, in this regard, the trial court found, on competent evidence, that Bohn breached the implied warranty of merchantability defined in § 4-2-314 in that the machines were defective and failed to perform in accordance with the ordinary purposes for which such machines are used. Hence, such findings may not be disturbed on review. Thiele v. State, 30 Colo.App. 491, 495 P.2d 558.
Bohn also contends that, since American had the opportunity to inspect the subsequent shipments of machines, there was a waiver of any implied warranty with respect to all except the first shipment. However, waiver is an affirmative defense, C.R.C.P. 8(c), and was not asserted in Bohn's reply to the counterclaim. Furthermore, our review of the record discloses that even though some evidence germane to the issue of waiver was presented, neither American's counsel nor the trial court intentionally tried this issue. Before an issue may be considered as tried by express or implied consent pursuant to C.R. C.P. 15(b), it must appear that the parties intentionally and actually tried that issue; it is not sufficient that some evidence relative thereto has been introduced. Clemann v. Bandimere, 128 Colo. 24, 259 P.2d 614; see Dreiling Motor Co. v. Shultz, 168 Colo. *867 59, 450 P.2d 70. Hence, the issue of waiver is not before us.
Bohn next asserts that American is barred from any remedy for breach of warranty because its notification of breach was neither timely nor sufficient. In support of this contention, Bohn suggests that written notification should be required and that American failed to provide any written notice for a period of nine months after the initial delivery of machines. This contention also lacks merit.
Section 4-2-607(3) requires that the buyer give notice of breach within a reasonable time after he knows or should have discovered a breach of warranty. Relative to the sufficiency of notice, official comment 4, § 4-2-607, states inter alia:
"The content of the notification need merely be sufficient to let the seller know that the transaction is still troublesome and must be watched. . . . The notification which saves the buyer's rights under this Article need only be such as informs the seller that the transaction is claimed to involve a breach, and thus opens the way for normal settlement through negotiation."
Hence, we conclude there is no requirement that notification be formal or written. See Smith v. Butler, 19 Md.App. 467, 311 A.2d 813; cf. MacGregor v. McReki, Inc., 30 Colo.App. 196, 494 P.2d 1297. Bohn, in effect, concedes that oral notification by American was timely, and the evidence supports the trial court's finding that the oral notification was sufficient to advise Bohn of the breach of warranty. Hence, we may not disturb that finding in this appeal. Linley v. Hanson, 173 Colo. 239, 477 P.2d 453.

II. Real Party in Interest
Bohn contends that American is not the real party in interest to maintain this action. In support thereof it argues that nine of the 24 machines involved in this action were purchased prior to incorporation of American and at a time when American operated as a partnership. Bohn therefore asserts that the corporation may not assert any claim with respect to the nine machines purchased by the partnership, and because these nine cannot be specifically identified, the claim as to all machines should be dismissed.
Bohn recognizes that in the course of presenting its case on American's liabilities, the trial court accepted the following stipulation offered by American's counsel and accepted by Bohn's counsel:
"We would stipulate that there is no break in the continuity of business and that they [American] have assumed the liabilities which may have occurred prior to incorporation." (emphasis supplied)
From this stipulation the trial court obviously inferred that the corporation acquired the assets of the partnership as well as its liabilities. No evidence to the contrary was introduced. Hence we conclude that the trial court's inference was proper, and that the corporation is the party in interest in this proceeding.

III. Damages
Bohn contends that the trial court's findings are inadequate to support its award of damages to American. We agree.
During the trial, American presented testimony relative to its damages claiming: (1) Loss of "gross profits" in the amount of $28,550 based on five accounts which it allegedly lost as a result of defective machines which were returned and not replaced; (2) $14,658 in out-of-pocket expenses for replacement of machines and assumption of its customers' outstanding obligations to the finance company; (3) $8,637 claim based on potential additional orders from one customer that were allegedly cancelled because the customer was dissatisfied with one Bohn RR-4500; (4) $4,500 to replace nine units which it maintained in the field at time of trial; and (5) $4,000 for an estimated 400 service calls that the equipment required beyond normal needs for comparable equipment.
*868 Based on this evidence, the trial court awarded $27,800 but did not specify which items of damage served as the basis therefor.
On this appeal Bohn attacks the damages awarded on several bases including: (1) That a proximate cause relationship was not established between the breach of warranty and the alleged damages; (2) that at least some of the alleged damages did not qualify as consequential damages; and (3) that the loss of profits award is not sustainable under the evidence presented. Relying, inter alia, on Lee v. Durango Music, 144 Colo. 270, 355 P.2d 1083; Comet Industries, Inc. v. Best Plastic Container Corp., 222 F.Supp. 723 (D.Colo.), and Westric Battery Co. v. Standard Electric Co., Inc., 482 F.2d 1307 (10th Cir.), Bohn contends that American's loss of profits based upon projected loss of future sales and service contracts is too speculative for recovery. In this connection, Bohn also asserts that there was no evidence from which loss of net profits could be calculated and thus an award therefor may not be allowed under the rule announced in Lee v. Durango Music, supra.
Since we are unable to determine the basis for the trial court's award and do not know which, and to what extent, American's claims were disallowed, we cannot address the issues raised by Bohn relative to the award of damages. Therefore, the case must be remanded for further proceedings relative to the damages issue. See C.R.C.P. 52.
We have considered Bohn's numerous other contentions and find them to be without merit.
The judgment is affirmed as to Bohn's liability for breach of warranty. The judgment is reversed on the issue of defendant's damages and the cause is remanded with directions for the trial court to make additional findings relative to the damages issue and for such additional hearings, if any, as the trial court deems advisable.
SMITH and STERNBERG, JJ., concur.