2015 COA 46

DeeAnna SOICHER, Plaintiff–Appellant,

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,**
Defendant–Appellee.

**Court of Appeals No. 13CA2305**

Colorado Court of Appeals,
Div. I.

Announced April 23, 2015

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S. 2014.

**562**

Anderson Hemmat & McQuinn, LLC, Chad P. Hemmat, Greenwood Village, Colorado; The Viorst Law Offices, P.C., Anthony Viorst, Denver, Colorado, for Plaintiff–Appellant

Frank Patterson & Associates, P.C., Thomas J. Seaman, Karl A. Chambers, Greenwood Village, Colorado, for Defendant–Appellee

Opinion by JUDGE GABRIEL

¶ 1 In this case arising out of a motor vehicle accident, plaintiff, DeeAnna Soicher, appeals the trial court's judgment, entered on a jury verdict, in favor of defendant, State Farm Mutual Automobile Insurance Company. (The court also entered judgment in the total amount of $125,000 against the driver of the other vehicle, Anthony D. Manueke, who, along with State Farm, was a defendant in the trial court. Manueke has not appealed the judgment against him and, thus, is not a party here.)

¶ 2 We conclude that the trial court erred in entering judgment for State Farm based on Soicher's alleged noncooperation because (1) State Farm did not properly plead noncooperation as either an affirmative defense or a failure of a condition precedent and (2) the parties did not try this issue by express or implied consent. We further conclude

that the trial court properly refused to instruct the jury on the unreasonable denial of Soicher's claim because we agree with the court that this case involved an alleged unreasonable delay in paying, not an alleged unreasonable denial of, insurance benefits.

¶ 3 Accordingly, we vacate the portion of the judgment relating to Soicher's claims against State Farm, and we remand this case with instructions that the trial court enter judgment for Soicher on her breach of insurance contract claim against State Farm and for State Farm on Soicher's remaining claims against it.

## I. Background

¶ 4 At the time pertinent here, Soicher had a motor vehicle insurance policy with State Farm. This policy provided her with $250,000 in uninsured motorist (UM) coverage.

¶ 5 In 2009, Manueke, who was uninsured, rear-ended another car, which in turn collided with Soicher's vehicle. Soicher suffered a concussion in the accident, and this concussion exacerbated a prior mild traumatic brain injury.

¶ 6 Once State Farm learned of Soicher's accident, it promptly and repeatedly requested that Soicher complete and return a medical authorization, a medical provider summary sheet, and a questionnaire, as she was required to do under her insurance contract. After Soicher failed to respond to these requests for approximately six months, State Farm sent her a letter, stating that based on Soicher's noncooperation, State Farm (1) reserved its rights under Soicher's insurance policy, including the right to deny coverage in its entirety; and (2) did not waive any terms or conditions of the policy or any other rights that it had. Seven months later, still lacking any cooperation from Soicher, State Farm closed Soicher's claim file.

¶ 7 Approximately seven months after that, Soicher retained counsel, and counsel contacted State Farm, indicating that he was going to be representing Soicher. State Farm then reopened Soicher's claim, and counsel subsequently provided the previously requested documents.

¶ 8 Thereafter, Soicher made a settlement demand on State Farm, requesting that State Farm pay her, among other things, her UM policy limit of $250,000. State Farm, which was still investigating Soicher's claims, did not respond immediately, and because the statute of limitations was approaching, Soicher filed the present lawsuit. In this suit, Soicher asserted claims against State Farm for breach of the insurance contract, breach of the duty of good faith and fair dealing, and violations of sections 10–3–1115 and 10–31116, C.R.S.2014, based on State Farm's alleged unreasonable delay or denial of payment on Soicher's claim for UM benefits. She also alleged that she had performed all obligations imposed on her by her insurance policy.

¶ 9 Several weeks after Soicher filed her complaint, State Farm responded to her settlement demand, offering to settle for $40,997.60. Soicher rejected this offer and proceeded to litigate her claims. In the course of the litigation, State Farm advanced Soicher the $40,997.60 that it had offered, notwithstanding the fact that it had obtained information that led it to conclude that its initial evaluation of Soicher's claim was higher than it should have been.

¶ 10 As pertinent here, in its answer to the amended complaint, State Farm generally denied that Soicher had performed all obligations imposed on her by her insurance policy and asserted as an affirmative defense that Soicher had "failed to carry out her own duty of good faith and fair dealing." State Farm did not explicitly assert an affirmative defense of noncooperation.

¶ 11 The case proceeded to a jury trial, and just before the close of the evidence, State Farm submitted a proposed verdict form that apparently implicated the defense of noncooperation. (The proposed verdict form is not in the appellate record.) Soicher objected to this proposed verdict form, arguing, among other things, that State Farm had not properly or timely given her notice of any such contract-voiding theory of defense. The court, however, did not immediately rule on this objection. Rather, it decided to include in the final verdict form special interrogatories, asking, among other things, (1) whether

Soicher had failed to cooperate with State Farm and (2) if so, whether the failure to cooperate was material and substantial such that State Farm was disadvantaged in its effort to investigate Soicher's claim. The court then requested further briefing on the propriety of State Farm's proffered noncooperation defense and indicated that it would enter judgment on the jury's findings after it had determined whether State Farm would be permitted to pursue that defense.

¶ 12 As pertinent here, the jury ultimately returned a verdict as to State Farm, finding that (1) Soicher had failed to cooperate with State Farm; (2) her failure to cooperate was material and substantial such that State Farm had been disadvantaged in its effort to investigate Soicher's claim; (3) State Farm did not unreasonably delay payment of UM benefits to Soicher; (4) State Farm knew or recklessly disregarded the fact that its conduct was unreasonable; and (5) any unreasonable conduct by State Farm did not cause Soicher damages.

¶ 13 Subsequently, the court ruled that the issue of Soicher's noncooperation had been pleaded by implication, namely, through State Farm's affirmative defense of Soicher's failure to fulfill her own duty of good faith and fair dealing. In addition, the court noted that (1) Soicher had stipulated in the trial management order that the contract claim for UM benefits was subject to the terms and conditions of the insurance policy and (2) State Farm's trial exhibits contained the section of the policy concerning Soicher's duty to cooperate. In light of these circumstances, the court found that Soicher knew or should have known that she would not be able to recover her UM benefits if a jury found that she had failed to cooperate. The court thus entered judgment for State Farm on all of Soicher's claims against it.

¶ 14 Soicher now appeals.

## II. Noncooperation

¶ 15 Soicher first contends that the trial court erred in entering judgment based on State Farm's noncooperation defense because (1) noncooperation is either an affirmative defense or a failure of a condition prece-

dent and State Farm did not properly plead either one and (2) the parties did not try the noncooperation issue by express or implied consent. Soicher thus asserts that State Farm waived any defense concerning her alleged noncooperation.

¶ 16 State Farm responds that noncooperation is not an affirmative defense and that to the extent it is a failure of a condition precedent, State Farm properly pleaded that issue when it generally denied Soicher's allegation that she had performed all obligations imposed on her by her insurance policy. (We emphasize that both parties have treated noncooperation as either an affirmative defense or a failure of a condition precedent, and not as a failure to perform a concurrent obligation that excused State Farm's further performance. *See Kaiser v. Market Square Discount Liquors, Inc.,* 992 P.2d 636, 641 (Colo.App.1999). We do not address the latter scenario.)

¶ 17 We need not decide whether noncooperation is an affirmative defense or a failure of a condition precedent, however, because either way, we conclude that (1) State Farm did not plead the issue with the requisite specificity and (2) the parties did not try the issue by express or implied consent. Thus, State Farm waived the issue, and the trial court erred in entering judgment for State Farm based on it.

### A. Affirmative Defense or Condition Precedent

¶ 18 An affirmative defense is "[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's ... claim, even if all the allegations in the complaint are true." *Black's Law Dictionary* 509 (10th ed.2014); *accord State in Interest of Suthers v. Johnson Law Grp., PLLC,* 2014 COA 150, ¶ 23, 350 P.3d 961. Thus, an affirmative defense is not merely a denial of an element of a plaintiff's claim, but rather it is a legal argument that a defendant may assert to require the dismissal of a claim, notwithstanding the plaintiff's ability to prove the elements of that claim. *Dinosaur Park Invs., L.L.C. v. Tello,* 192 P.3d 513, 516 (Colo. App.2008).

¶ 19 When an insurer asserts a noncooperation defense, the insured will likely be held to have forfeited his or her right to recover under an insurance policy when, in violation of a policy provision, the insured fails to cooperate with the insurer in some material and substantial respect and this failure to cooperate materially and substantially disadvantaged the insurer. *State Farm Mut. Auto. Ins. Co. v. Secrist,* 33 P.3d 1272, 1275 (Colo.App.2001).

¶ 20 Because an insured's noncooperation and resulting prejudice to the insurer will thus generally defeat an insured's claim for coverage regardless of the insured's ability to prove his or her claims, many courts have recognized, either expressly or implicitly, that noncooperation is an affirmative defense. *See, e.g., Guessford v. Pa. Nat'l Mut. Cas. Ins. Co.,* 918 F.Supp.2d 453, 470 (M.D.N.C. 2013); *Specialty Surplus Ins. Co. v. Lexington Ins. Co.,* No. C06–5246RJB, 2007 WL 2404703, at *6 (W.D.Wash. Aug. 17, 2007) (unreported order); *Stewart Sleep Ctr., Inc. v. Atl. Mut. Ins. Co.,* 860 F.Supp. 1514, 1518 (M.D.Fla.1993); *Grant v. Transit Cas. Co.,* 71 Or.App. 777, 693 P.2d 1328, 1328–29 (1985).

¶ 21 An affirmative defense must be specifically asserted in a party's responsive pleading or it is waived. *See Dinosaur Park Invs., L.L.C.,* 192 P.3d at 517; *see also Haney v. Charter Homes, Inc.,* 524 P.2d 1397, 1398 (Colo.App.1974) (not published pursuant to C.A.R. 35(f)) (noting that a party's alleged lack of authority to sign a contract was a matter to be specifically pleaded as an affirmative defense). Thus, courts have refused to construe an asserted affirmative defense as raising a different, unasserted defense, even when the evidence supporting the two defenses was overlapping. *See, e.g., Ice v. Benedict Nuclear Pharms., Inc.,* 797 P.2d 757, 760 (Colo.App.1990) (refusing to construe an affirmative defense of fraudulent misrepresentation as an affirmative defense of rescission).

¶ 22 A condition precedent is "[a]n act or event, other than a lapse of time, that must exist or occur before a duty to perform something promised arises." *Black's Law Dictionary* at 355.

In pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred. A denial of performance or occurrence shall be made specifically and with particularity, and when so made the party pleading the performance or occurrence shall establish on the trial the facts showing such performance or occurrence.

C.R.C.P. 9(c).

¶ 23 Applying these principles here, we first conclude that to the extent noncooperation may be deemed to be an affirmative defense, State Farm's affirmative defense that Soicher violated her duty of good faith and fair dealing did not sufficiently raise the affirmative defense of noncooperation. We reach this conclusion for the following reasons.

¶ 24 Under Colorado law, every contract contains an implied duty of good faith and fair dealing. *Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc.*, 872 P.2d 1359, 1362 (Colo.App.1994). Thus, in the context of insurance contracts, an insurer has a duty to investigate and adjust claims in good faith, *see State Farm Mut. Auto. Ins. Co. v. Brekke*, 105 P.3d 177, 189 (Colo.2004), and an insured has a corresponding duty of good faith and fair dealing, *see Bailey v. Allstate Ins. Co.*, 844 P.2d 1336, 1339 (Colo. App.1992) (noting that each party to an insurance contract owes the other a duty of good faith and fair dealing). "Because 'good faith' is an implied covenant outside contractual specifics, there is no comprehensive list of conduct or qualities that constitute good faith in a given situation. Whether [a party] acts in 'good faith' depends on the particular facts of a case." 14 Steven Plitt, Daniel Maldonado, Joshua D. Rogers, and Jordan R. Plitt, *Couch on Insurance* § 198:5 (3d ed.2007).

¶ 25 In contrast, as noted above, Colorado law recognizes that the right to recover under an insurance policy may be forfeited when, in violation of a policy provision, the insured fails to cooperate with the insurer in some material and substantial respect and the failure to cooperate causes material and substantial disadvantage to the insurer. *Sec-*

*rist*, 33 P.3d at 1275. The scope of such noncooperation therefore depends on the specific policy provision at issue. *See id.*

¶ 26 As the foregoing authorities make clear, an insured's duty of good faith is broader than his or her duty to cooperate, and the consequences of breaching those respective duties are not necessarily the same. For example, as noted above, proof of an insured's prejudicial noncooperation will likely bar a claim for benefits. *See id.* Proof of a violation of the implied covenant of good faith and fair dealing, in contrast, will not necessarily do so. Moreover, although an insured's noncooperation may provide some evidence of the insured's bad faith, an insured's breach of the implied covenant of good faith does not necessarily implicate an insurance policy's cooperation requirement.

¶ 27 Accordingly, we conclude that State Farm's general assertion of a bad faith defense did not specifically apprise Soicher of a contract-voiding noncooperation defense, as required by C.R.C.P. 8(c) and the above-cited case law.

¶ 28 We likewise conclude that State Farm did not sufficiently assert Soicher's noncooperation as a failure of a condition precedent. Although Soicher generally averred that she had performed all obligations imposed on her by her insurance policy, as she was permitted to do, State Farm's general denial of that allegation did not satisfy the requirement that it plead the denial of the performance of a condition precedent "specifically and with particularity." C.R.C.P. 9(c). Nor was State Farm's general denial sufficient to put Soicher on notice that State Farm was asserting a failure of a condition precedent to the performance of its obligations under Soicher's policy.

¶ 29 We are not persuaded otherwise by State Farm's reliance on its reservation of rights letter and on the purported trial management order in this case. The reservation of rights letter was not a responsive pleading and thus was not a proper vehicle to assert either an affirmative defense or a failure of a condition precedent. *See* C.R.C.P. 8(c), 9(c). Moreover, the trial management order, if one was entered by the trial court, is not in the

appellate record, and, thus, we may not consider it or the parties' assertions as to what it may have said. *See In re T.L.B.,* 2012 COA 8, ¶ 4, 272 P.3d 1148, 1151 ("[W]e note that we may not consider information outside of the trial court record.").

¶ 30 Accordingly, we conclude that State Farm did not properly plead noncooperation as either an affirmative defense or the failure of a condition precedent. *See* C.R.C.P. 9(c); *Dinosaur Park Invs., L.L.C.,* 192 P.3d at 517; *Haney,* 524 P.2d at 1398.

### B. Express or Implied Consent

¶ 31 State Farm contends that even if it did not properly plead noncooperation as either an affirmative defense or a failure of a condition precedent, the issue was not waived because it was tried by the express or implied consent of the parties pursuant to C.R.C.P. 15(b). State Farm bases this argument on the facts that (1) Soicher did not object to the introduction of evidence regarding her lack of cooperation with State Farm; (2) Soicher stipulated in the purported trial management order that her coverage was subject to the terms and conditions of her insurance policy; and (3) the portion of the policy concerning Soicher's duty to cooperate was admitted into evidence.

¶ 32 C.R.C.P. 15(b) provides, in pertinent part, "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." We may deem an issue to have been tried by implied consent when it was tried and argued before the court without timely objection or motion. *See, e.g., CB Richard Ellis, Inc. v. CLGP, LLC,* 251 P.3d 523, 528–29 (Colo.App.2010). However, "[b]efore an issue may be considered as tried by express or implied consent pursuant to C.R.C.P. 15(b), it must appear that the parties intentionally and actually tried that issue; it is not sufficient that some evidence relative thereto has been introduced." *VLN Corp. v. Am. Office Equip. Co.,* 536 P.2d 863, 866 (Colo.App.1975) (not published pursuant to C.A.R. 35(f)); *see also Miller v. Mills Constr., Inc.,* 352 F.3d 1166, 1171 (8th Cir. 2003) (holding that an issue was tried by implied consent when one party argued the issue and introduced evidence related to it and the opposing party did not object); *Patelco Credit Union v. Sahni,* 262 F.3d 897, 907 (9th Cir.2001) (noting that a party's failure to object to evidence regarding an unpleaded issue may be evidence of implied consent to try that issue, but it must appear that the party understood that the evidence was being introduced to prove the unpleaded issue); *Hardin v. Manitowoc–Forsythe Corp.,* 691 F.2d 449, 457 (10th Cir.1982) ("Implied consent is found where the parties recognized that the issue entered the case at trial and acquiesced in the introduction of evidence on that issue without objection.").

¶ 33 Moreover, implied consent cannot be demonstrated solely by the introduction of evidence that is relevant to both a properly pleaded claim and an unpleaded claim because in such circumstances, the introduction of that evidence would not necessarily provide notice that the unpleaded claim was also being tried. *See Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 815, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) (concluding that the parties did not try a patent claim by implied consent when, although the summary judgment papers focused on patent law issues, those issues fell squarely within the purview of the theories of recovery, defenses, and contentions that the pleadings had already encompassed; accordingly, the patent law focus of the summary judgment papers "hardly heralded the assertion of a new patent-law claim").

¶ 34 Here, State Farm mentioned Soicher's noncooperation in opening statement, and it introduced evidence, testimony, and arguments tending to show Soicher's lack of cooperation. This evidence, however, was equally applicable to State Farm's contention that it did not unreasonably delay paying Soicher's claim and to its defense of Soicher's violation of the implied covenant of good faith and fair dealing.

¶ 35 Moreover, we perceive nothing in the record to suggest that Soicher understood that this evidence was being introduced on the unpleaded defenses of noncooperation or the failure of a condition precedent. To the

contrary, Soicher's responsive evidence and arguments appear to have been geared toward showing that her failures to provide information on a timely basis were justifiable and not in bad faith, thus indicating her understanding that the evidence was being introduced solely in connection with State Farm's defense of Soicher's violation of the implied covenant of good faith and fair dealing. Such a conclusion finds further support in the fact that Soicher did not call an industry expert to address whether any failure on her part to cooperate materially and substantially disadvantaged State Farm, which is an element of a noncooperation defense. *See Secrist*, 33 P.3d at 1275. Soicher asserts that she would have called such an expert had she been on notice that she was trying a noncooperation defense.

¶ 36 Lastly, we view as telling the fact that State Farm proffered no jury instructions on either the defense of noncooperation or the defense of the failure of a condition precedent. Had State Farm believed it was trying either of those issues on the express or implied consent of the parties, we would have expected it to proffer jury instructions on those points of law.

¶ 37 In these circumstances, we conclude that the trial court erred in allowing State Farm to assert a belated noncooperation defense and in entering judgment based on that defense.

¶ 38 In light of our foregoing disposition, we need not address Soicher's additional contention that even if noncooperation was sufficiently pleaded, the evidence was nonetheless insufficient to establish the requisite prejudice to State Farm.

## III. Unreasonable Denial

¶ 39 Soicher next contends that the trial court erred in refusing to instruct the jury that State Farm could be held liable, pursuant to sections 10–3–1115 to –1116, for its unreasonable denial, as opposed to its alleged unreasonable delay, in processing Soicher's claim. We conclude that Soicher did not show either error or prejudice here.

### A. Pertinent Facts

¶ 40 During the jury instruction conference, State Farm objected to the trial court's instructing the jury on unreasonable denial of a claim, arguing that this case did not involve a denied claim. In so arguing, State Farm noted Soicher's contention that by not paying the full amount of Soicher's $250,000 demand, State Farm had effectively denied the portion of the claim that it did not pay (i.e., the difference between the $40,997.60 that it had previously paid and the policy limit that Soicher had demanded). State Farm asserted, however, that this was not a denial of a claim but rather was a dispute over the value of an allowed claim.

¶ 41 Soicher responded that such a reading would allow insurance companies to offer a nominal amount (e.g., one dollar) and then argue that they did not deny the claim because they had offered the nominal amount. Soicher thus contended that this case involved *both* a delay of benefits (apparently regarding the $40,997.60 that State Farm had paid) and a denial of benefits (i.e., the difference between the amount paid and the $250,000 policy limit).

¶ 42 The trial court agreed with State Farm, stating:

> The court believes that this is a delay case, not a denying [sic] case, because the plaintiff's evidence does not support that State Farm refused to pay the case. Or, pay the claim. It's just a matter of whether or not they delayed in paying the total amount that was due and whether or not there was a delay there at the end with regard to the statute of limitations.

¶ 43 The court thus instructed the jury only as to unreasonable delay, not unreasonable denial.

### B. Standard of Review and Applicable Law

¶ 44 A trial court is required to instruct the jury on a party's theory of the case when requested to do so, if the theory is supported by evidence admitted at trial and by the applicable law. *See Cmty. Hosp. v. Fail*, 969 P.2d 667, 676 (Colo.1998). It is not reversible error for a trial court to refuse an

instruction, however, if the instructions ultimately. given to the jury encompassed the contents of the rejected instruction. *Id.* at 677. Absent a showing of substantial, prejudicial error, a trial court's refusal to give a requested instruction does not warrant a reversal of a judgment. *Id.* at 676–77.

¶ 45 We review issues of statutory construction de novo. *See Chittenden v. Colo. Bd. of Soc. Work Exam'rs*, 2012 COA 150, ¶ 11, 292 P.3d 1138, 1140. Our primary purpose in statutory construction is to ascertain and give effect to the intent of the General Assembly. *Id.* We look first to the language of the statute, giving words and phrases their plain and ordinary meanings. *Id.* We read words and phrases in context and construe them according to their common usage. *Id.* at 292 P.3d at 1141.

¶ 46 In addition, we must interpret a statute in a way that best effectuates the purpose of the legislative scheme. *Id.* at 292 P.3d at 1141. When a court construes a statute, it should read and consider the statute as a whole and interpret it in a manner giving consistent, harmonious, and sensible effect to all of its parts. *Id.* In doing so, a court should not interpret the statute so as to render any part of it either meaningless or absurd. *Id.* If the statute is unambiguous, we look no further. *Id.* at 292 P.3d at 1141.

¶ 47 As pertinent here, section 10–3–1115(1)(a) provides, "A person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant." Section 10–3–1116(1), in turn, provides, "A first-party claimant as defined in section 10–3–1115 whose claim for payment of benefits has been unreasonably delayed or denied may bring an action in a district court to recover reasonable attorney fees and court costs and two times the covered benefit."

### C. Discussion

¶ 48 A "denial of claim" is defined as "[t]he rejection of an application for benefits.—Also termed (in insurance) *denial of insurance claims.*" *Black's Law Dictionary* at 527.

¶ 49 Here, State Farm did not reject Soicher's application for benefits. To the contrary, it conceded coverage but disputed the amount that was to be paid. Accordingly, we agree with the trial court that this case did not involve the unreasonable denial of Soicher's claim. Rather, it involved an alleged unreasonable delay in paying the benefits purportedly due.

¶ 50 *Rabin v. Fidelity National Property & Casualty Insurance Co.*, 863 F.Supp.2d 1107, 1110 (D.Colo.2012), on which Soicher relies, is inapposite. *Rabin* did not hold that there is a distinction between unreasonably delaying and unreasonably denying claims, as Soicher suggests. Rather, the case concerned the meaning of the phrase "two times the covered benefit" in section 10–3–1116(1). *Id.* Specifically, the court concluded that a plaintiff whose claim was *either* unreasonably delayed *or* unreasonably denied was entitled to recover *both* the benefits themselves *and* two times the covered benefit. *Id.* at 1112. Likewise, *Rabin* did not hold that a claim can be simultaneously delayed and denied, and in our view such a reading would be inconsistent with the plain language of sections 10–3–1115(1)(a) and 10–3–1116(1).

¶ 51 We are not persuaded otherwise by Soicher's contention that interpreting "unreasonably deny" as we have done would eliminate the statute's protection when, as here, an insurer makes a partial payment to the insured but fails to pay the full amount being sought. Under the plain language of sections 10–3–1115(1)(a) and 10–3–1116(1), a plaintiff can argue that benefits were unreasonably denied when an insurer denies a claim outright, and the plaintiff can assert unreasonable delay when the insurer pays on a claim but disputes the value of that claim, thereby delaying payment of the claim's full value. Indeed, that is precisely what Soicher did in this case.

¶ 52 Even if the trial court erred in rejecting the proposed jury instruction on unreasonable denial, however, we conclude that any error was harmless.

¶ 53 The jury instructions that the court gave did not specify what benefits were unreasonably delayed. Thus, Soicher could—and correctly did—argue that State Farm unreasonably delayed paying both the

$40,997.60 that it had paid Soicher and the remaining $209,002.40 that she claimed was due.

¶ 54 Accordingly, we do not perceive how Soicher was prejudiced by any error in the instructions at issue here.

## IV. Remedy

¶ 55 Having concluded that the trial court erred in finding that Soicher's noncooperation barred her claims against State Farm, we must determine the appropriate remedy.

¶ 56 In his opening statement at trial, State Farm's counsel told the jury, "[W]hatever damages you assess against Mr. Manueke, State Farm is going to be liable for under its uninsured motorist coverage." Thereafter, State Farm's sole defense to Soicher's breach of insurance contract claim appears to have been that Soicher's noncooperation barred that claim. Because we have rejected this defense, and based on counsel's above-quoted assertion, we conclude that Soicher is entitled to the entry of judgment on her breach of insurance contract claim in the amount of damages that the jury assessed against Manueke, namely, $100,000 in noneconomic losses and $25,000 in economic losses plus applicable prejudgment interest (with credit to be given for the amounts that State Farm previously paid Soicher).

¶ 57 We reach a different conclusion, however, with respect to Soicher's claims against State Farm for breach of the duty of good faith and fair dealing and violations of sections 10–3–1115 and 103–1116. As noted above, by special interrogatories, the jury found that State Farm did not unreasonably delay payment of UM benefits to Soicher and that although State Farm knew or recklessly disregarded the fact that its conduct was unreasonable, any unreasonable conduct on its part did not cause Soicher damages. Because these findings establish that Soicher had failed to prove the requisite elements of her claims for breach of the duty of good faith and fair dealing and violations of sections 10–3–1115 and 103–1116, we conclude that State Farm is entitled to judgment on those claims.

## V. Conclusion and Remand Order

¶ 58 For these reasons, the portion of the judgment relating to Soicher's claims against State Farm is vacated, and the case is remanded with directions that the trial court enter judgment (1) for Soicher and against State Farm in the amount of $125,000 plus prejudgment interest on Soicher's breach of insurance contract claim (with credit to be given for the amounts that State Farm previously paid Soicher) and (2) for State Farm and against Soicher on Soicher's claims for breach of the duty of good faith and fair dealing and violations of sections 10–3–1115 and 10–3–1116. In all other respects, the judgment is affirmed.

JUDGE TAUBMAN and JUDGE BOORAS concur.