FILED
United States Court of Appeals
Tenth Circuit

December 17, 2021

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

NEIL HALL,

    Plaintiff - Appellant,

v.

ALLSTATE FIRE AND CASUALTY
INSURANCE COMPANY,

    Defendant - Appellee.

No. 21-1040

_____

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:19-CV-02604-DDD-NYW)**

_____

Mark R. Levy (Matthew W. Hall, and Ryan E. Nichols with him on the briefs), Levy
Law, PC, Englewood, Colorado, for Plaintiff - Appellant.

Robert S. Hunger (Kurt H. Henkel and Justin H. Zouski, with him on the brief), Tucker
Holmes, P.C., Centennial, Colorado, for Defendant - Appellee.

_____

Before **MORITZ**, **KELLY**, and **BRISCOE**, Circuit Judges.

_____

**KELLY**, Circuit Judge.

_____

    Plaintiff-Appellant Neil Hall appeals from the district court's grant of

summary judgment in favor of Defendant-Appellee Allstate Fire and Casualty

Insurance Company (Allstate) on his claim for underinsured motorist benefits.  See

Hall v. Allstate Fire & Cas. Ins. Co., No. 19-cv-02604, 2021 WL 119344 (D. Colo. Jan. 12, 2021).  Mr. Hall challenges the district court's determination that Allstate successfully asserted the affirmative defense of failure to cooperate and that his bad faith claim also fails as a result.  This court has jurisdiction under 28 U.S.C. § 1291, and we affirm.

## Background

On October 4, 2018, Mr. Hall was injured in a car accident caused by underinsured motorist Teri Johnson.  1 Aplt. App. 72.  Ms. Johnson only carried $25,000 in liability insurance coverage.  1 Aplt. App. 72.  Mr. Hall carried underinsured motorist coverage through Allstate.  1 Aplt. App. 72.  Allstate gave Mr. Hall permission to settle with Ms. Johnson for her $25,000 limit.  1 Aplt. App. 72.

On April 8, 2019, Mr. Hall's counsel submitted a request for benefits to Allstate asserting that he was entitled to more than the $25,000 he had received.  1 Aplt. App. 91.  This request included a list of Mr. Hall's medical expenses which totaled $27,619.18.  1 Aplt. App. 91–92.  The letter stated: "Mr. Hall is continuing to receive medical care for the injuries he suffered in the October 4, 2018 collision.  I will continue to forward new records and bills as I receive them for your review."  1 Aplt. App. 91.  The letter also stated: "If there is additional information that will assist in your evaluation, please let us know."  1 Aplt. App. 91.  An Allstate claims adjuster reviewed the medical expenses in the letter and determined that the reasonable amount of expenses was $25,011.68.  1 Aplt. App. 92–93.  On May 9,

2019, Allstate sent Mr. Hall's counsel a payment of $11.68 along with a letter that stated: "I will be in contact with you to resolve the remaining components of your client's claim." 1 Aplt. App. 96.

Allstate claims adjuster Brittney Montoya called Mr. Hall's counsel on May 20, 2019 and left a voicemail regarding Mr. Hall's current treatment status. 1 Aplt. App. 97. On June 17, 2019, Ms. Montoya sent counsel a letter asking to discuss Mr. Hall's treatment status. 1 Aplt. App. 98. Ms. Montoya left another voicemail with counsel on July 9, 2019. 1 Aplt. App. 98. Ms. Montoya sent another letter to counsel on July 19, 2019. 1 Aplt. App. 98. On August 14, 2019, Ms. Montoya sent a third letter to counsel requesting Mr. Hall's medical records and bills. 1 Aplt. App. 98. Counsel did not respond to any of the five attempts over three months: two voicemails and three letters. 1 Aplt. App. 97–98.

On August 20, 2019 — without any prior notice to Allstate — Mr. Hall filed suit against Allstate for breach of contract, statutory unreasonable delay or denial of payment of benefits, and common law bad faith. 1 Aplt. App. 29–38. During discovery, Mr. Hall disclosed that he had received treatment with the Brain and Behavior Clinic (the Clinic) from June 2019 to August or September 2019, during the period in which Ms. Montoya repeatedly asked Mr. Hall for information about his current treatment status. Compare 1 Aplt. App. 97–98, with 1 Aplt. App. 215–16.

Allstate filed a motion for summary judgment based on an affirmative defense of failure to cooperate. 1 Aplt. App. 70–89. Mr. Hall's insurance policy contains the following provision: "An insured person must cooperate with **us** in the investigation,

3

settlement and defense of any claim or lawsuit." 1 Aplt. App. 244. Allstate argued that Mr. Hall could not recover his benefits because he ignored Allstate's phone calls and letters, failed to inform Allstate of his additional treatment at the Clinic, and sued Allstate for bad faith. 1 Aplt. App. 70–89. The district court granted Allstate summary judgment as to all claims. 2 Aplt. App. 375. The court found that Mr. Hall's failure to respond to Allstate's repeated requests for information constituted a failure to cooperate. 2 Aplt. App. 377–79. Additionally, the court found that Allstate suffered a material and substantial disadvantage from Mr. Hall's failure to cooperate because it forced Allstate to defend the case without the ability to properly investigate the claim. 2 Aplt. App. 379. The court also found that summary judgment was proper for Mr. Hall's unreasonable delay[1] and bad faith claims because no benefits were owed and all of Mr. Hall's claimed damages stemmed from the denial of benefits. 2 Aplt. App. 381–82.

On appeal, Mr. Hall argues that the district court erred in concluding that Allstate had demonstrated substantial and material prejudice. He further argues that Allstate failed to show that Mr. Hall acted deliberately or in bad faith and no evidence suggested a failure to perform any specific, enumerated obligation under the insurance policy. Finally, he challenges the grant of summary judgment on the bad faith claim.

---

[1] Mr. Hall does not appeal the grant of summary judgment as to this claim.

**Discussion**

Our review is de novo and we apply the same summary judgment standard as the district court. Cillo v. City of Greenwood Vill., 739 F.3d 451, 461 (10th Cir. 2013). Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). However, we view the facts and their reasonable inferences in the light most favorable to the non-movant. Cillo, 739 F.3d at 461. Given a properly supported motion for summary judgment on an affirmative defense, a non-movant must respond with significantly probative evidence demonstrating a need for trial on that defense. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50 (1986); Helm v. Kansas, 656 F.3d 1277, 1284 (10th Cir. 2011).

A.    **Failure to Cooperate Defense for Breach of Contract Claim**

Under Colorado law, an insured may forfeit his right to recover if he fails to cooperate in violation of an insurance policy provision. See Soicher v. State Farm Mut. Auto. Ins. Co., 351 P.3d 559, 564 (Colo. App. 2015). For an insurer to assert the affirmative defense of failure to cooperate, it must show: (1) "the insured fails to cooperate with the insurer in some material and substantial respect"; and (2) "this failure to cooperate materially and substantially disadvantaged the insurer." Id. Although the question of whether an insured failed to cooperate is a question of fact, if "the record can produce no other result" than a finding of a failure to cooperate, the insurer is entitled to summary judgment. Hansen v. Barmore, 779 P.2d 1360, 1364 (Colo. App. 1989).

5

As to the first element of a failure to cooperate defense, Mr. Hall argues that an insurer must show that an insured's actions constituting the failure to cooperate were deliberate and in bad faith. Aplt. Br. at 27–28 (citing Farmers Auto. Inter-Ins. Exch. v. Konugres, 202 P.2d 959, 963 (Colo. 1949)). As the district court rightfully pointed out, Konugres does not stand for this proposition. Hall, 2021 WL 119344, at *3. In that case, the Supreme Court of Colorado merely stated that "a breach of the co-operation clause may be excused, if it develops that the failure of the assured was due to mistake, and that there was no exercise of bad faith on his part." Konugres, 202 P.2d at 963. This case does not create an additional "bad faith" element in the failure to cooperate defense that Allstate was required to show. Rather, it provides a narrow situation where an insured's failure to cooperate may be excused. Mr. Hall also cites a more recent Colorado case for the proposition that an intentional or deliberate action is required to violate a cooperation clause. Aplt. Reply Br. at 19–20 (citing State Farm Mut. Auto. Ins. Co. v. Secrist, 33 P.3d 1272, 1275 (Colo. App. 2001)). However, this case merely states the general purpose of a cooperation clause in an insurance policy. See Secrist, 33 P.3d at 1275. Even if intentionality were required, failing to respond to three letters and two phone calls within a three-month period and filing suit without notice one week after the final letter amply demonstrate a deliberate failure to communicate with Allstate.

Mr. Hall also argues that failure to cooperate in a material and substantial way requires that the insured violate a specifically enumerated obligation in the insurance policy, rather than the general cooperation language that Allstate relies on in this

6

case.[2]  Aplt. Br. at 30–34; Aplt. Reply Br. at 13–17.  He relies heavily on Ahmadi v.

Allstate Insurance Co., 22 P.3d 576 (Colo. App. 2001), for this proposition.  But

Ahmadi held that a disagreement over the specific method of cooperation is not the

same as failing to cooperate.  See Ahmadi, 22 P.3d at 580; Polland v. State Farm

Mut. Auto. Ins. Co., No. 19-cv-01416, 2020 WL 6799934, at *5 (D. Colo. Nov. 19,

2020).  Here, Mr. Hall simply failed to answer any of Allstate's requests for

additional information, so he violated his basic contractual duty to provide

information to Allstate.  See State Farm Mut. Auto. Ins. Co. v. Brekke, 105 P.3d 177,

189 (Colo. 2004) (en banc).  No further enumerated obligation is required to show his

failure to cooperate.  The district court correctly concluded that Mr. Hall's failure to

respond to five communications over three months could only be viewed as a failure

to cooperate in a material and substantial way.  See Polland v. State Farm Mut. Auto.

Ins. Co., No. 19-cv-01416, 2019 WL 10258801, at *5 (D. Colo. Oct. 25, 2019)

(collecting cases), reh'g denied, Polland, 2020 WL 6799934.

    As to the second element of a failure to cooperate defense, Mr. Hall argues

that Allstate submitted no evidence that showed his failure to cooperate rendered

Allstate incapable of investigating his claim.  Aplt. Br. at 19–20.  However, the

standard to establish a material and substantial disadvantage is whether an insured's

---

[2] In addition, Mr. Hall argues the contract language at issue is ambiguous. Aplt. Br. at 35.  He also asserts that general cooperation provisions are only enforceable in the context of third-party insurance claims.  Aplt. Br. at 33.  However, Mr. Hall did not develop these arguments below, nor did he argue for plain error on appeal.  As such, we will not consider these arguments.  See Richison v. Ernest Grp., Inc., 634 F.3d 1123, 1131 (10th Cir. 2011).

conduct prevented a reasonable investigation under the circumstances, not whether an insurer's investigation was rendered impossible. See Walker v. State Farm Fire & Cas. Co., No. 16-cv-00118, 2017 WL 1386341, at *3–4 (D. Colo. Feb. 23, 2017). Here, Allstate was prevented from conducting a reasonable investigation because Mr. Hall failed to respond to any of its communications regarding information about additional treatment. See Polland, 2019 WL 10258801, at *7. To the extent that Mr. Hall argues that any failure to respond to Allstate's inquiries was immaterial because he had no additional information to provide, see Aplt. Br. at 21–22, this is belied by his disclosure during discovery that he was receiving treatment at the Clinic between June and September 2019. 1 Aplt. App. 215–16. This corresponds to the same period in which Allstate repeatedly attempted to contact Mr. Hall. By failing to respond to Allstate's inquiries, Mr. Hall put Allstate "in the untenable position of either denying coverage or paying the claim without the means to investigate its validity." Walker, 2017 WL 1386341, at *4 (quoting 1 Allan D. Windt, Insurance Claims & Disputes § 3.2 (6th ed. 2016)).

Separately, Allstate suffered a material and substantial disadvantage because Mr. Hall's failure to cooperate forced it to defend a bad faith lawsuit. See Cribari v. Allstate Fire & Cas. Ins. Co., 861 F. App'x 693, 702 (10th Cir. 2021) (unpublished).[3] Having to defend a bad faith lawsuit puts an insurer at a disadvantage because "had plaintiff cooperated, Defendant would have had the relevant information to make an

---

[3] We cite this and other unpublished dispositions only for their persuasive value. 10th Cir. R. 32.1.

8

informed offer prior to Plaintiff's filing of the bad faith suit." Id. Because it was Mr. Hall that initiated this action without providing Allstate with answers to its inquiries or notice that he intended to sue, Allstate was put at a material and substantial disadvantage in defending against his claims.

Finally, Mr. Hall argues that under Colorado law, Allstate was required to provide notice and opportunity to cure before asserting its failure to cooperate defense. Aplt. Br. at 25–26. The district court correctly concluded that Allstate raised its failure to cooperate defense as soon as Mr. Hall's failure to cooperate became prejudicial — in its answer to Mr. Hall's complaint. See 2 Aplt. App. 379–80. Mr. Hall's argument that he cured any material disadvantage to Allstate by providing the requested information during litigation was not raised below and need not be considered here. See Richison, 634 F.3d at 1131. Even if this court were to consider this argument, it lacks merit. Where, as here, the lawsuit itself is a prejudicial result of a plaintiff's failure to cooperate, providing the requested information during litigation does not cure the source of prejudice because a defendant has already been forced to retain counsel and face extra-contractual damages. See Cribari, 861 F. App'x at 704–05. The district court correctly concluded that Mr. Hall's failure to cooperate resulted in a material and substantial disadvantage to Allstate.

## B.    Bad Faith Claim

"It is settled law in Colorado that a bad faith claim must fail if, as is the case here, coverage was properly denied and the plaintiff's only claimed damages flowed

9

from the denial of coverage." <u>MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.</u>, 558 F.3d 1184, 1193 (10th Cir. 2009). Because the district court found that Allstate properly denied coverage through its failure to cooperate defense, it properly granted summary judgment as to Mr. Hall's bad faith claim.

AFFIRMED.